**Richmond**

RICO HOLLIDAY

v.

COMMONWEALTH OF VIRGINIA

No. 0977-85

Decided January 20, 1987

COUNSEL

Thomas N. Parker, Jr., for appellant.

M. Katharine Spong, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief) for appellee.

OPINION

**KOONTZ, C.J.** — Rico Holliday was tried and convicted on July 24, 1985, pursuant to the provisions of Code § 18.2-55 for causing bodily injury to an employee of Mecklenburg Correctional Center. We have limited this appeal to the sole issue whether Holliday was denied his right to a speedy trial under the sixth amendment of the United States Constitution and article 1, section 8 of the Virginia Constitution. Finding no denial of this right, we affirm.

While approximately sixteen months elapsed from the date the crime was committed until Holliday's trial in the circuit court, for purposes of our review the crucial time period encompasses the approximately ten month period from the date of Holliday's arrest to the date of the trial. During this entire period of time Holliday remained incarcerated.

The crime, which was a felony, occurred on March 23, 1984, while Holliday was an inmate at Mecklenburg Correctional Center. On August 8, 1984, a warrant was issued for Holliday's arrest and was served on him on August 29, 1984. Following three requests for continuances made by the Commonwealth on September 13, 1984, October 11, 1984, and January 11, 1985, respectively, a preliminary hearing was held on March 14, 1985. The district court orders reveal no specific reasons for granting these continuances nor any objections to these continuances made by Holliday.

An attorney was appointed on December 13, 1984, and he was present at the preliminary hearing. While Holliday asserts at oral argument that he raised his speedy trial claim at the preliminary hearing, the district court records are silent on that point. Subsequently, the grand jury returned an indictment on June 17, 1985, and Holliday was brought to trial in the circuit court on July 14, 1985. Immediately prior to trial, Holliday's claim of a denial of his speedy trial right was overruled by the trial court.

■ At the outset of our analysis of Holliday's speedy trial claim, we note that the legislature of this Commonwealth, consistent with constitutional standards, has prescribed specific periods within which a criminal defendant must be offered a trial. Code § 19.2-243. We have previously addressed the application of this statute in *Cantwell v. Commonwealth*, 2 Va. App. 606, 347 S.E.2d 523 (1986). The legislative purpose of this limitations statute was to clarify when the right to a speedy trial is infringed and to simplify the courts' application of it. This statute prescribes specific periods of time from either the preliminary hearing or indictment by which the defendant must be brought to trial. Furthermore, it is subordinate to the constitutional right to a speedy trial guaranteed by both the federal and state constitutions. Holliday was brought to trial within the time period prescribed by Code § 19.2-243 since less than five months elapsed from the time of the preliminary hearing until the trial was commenced; we will assume that the five month limitation was applicable because during this period Holliday was continuously held in custody. Since the delay of which Holliday complains occurred prior to the preliminary hearing and the issuance of the indictment, the limitation periods of Code § 19.2-243 are not applicable. Holliday's claim, therefore, must be based on the constitutional guarantees of a speedy trial.

■ Our consideration of the constitutional issues must begin with the recognition, as was pointed out by Justice Poff in *Fowlkes v. Commonwealth*, 218 Va. 763, 764 n.2, 240 S.E.2d 662, 663 n.2 (1978), that the speedy trial guarantee incorporated within the provisions of the Virginia Declaration of Rights, 1776 § 8, was one of the roots of the sixth amendment to the United States Constitution. Accordingly, based on the record before us in this particular case, we review Holliday's constitutional speedy trial claims without distinction under both the federal and state

constitutions.

■ Holliday's constitutional speedy trial claims require a functional analysis of the rights in the context of the particular facts of this case. Such an approach was first set forth in *Barker v. Wingo*, 407 U.S. 514 (1972), where the United States Supreme Court, recognizing the difficulty in evaluating speedy trial claims, adopted a balancing test, in which the conduct of both the prosecution and the defendant is examined. *Id.* at 530. The *Barker* Court identified four factors to be assessed by courts in determining whether a particular defendant has been deprived of his speedy trial right: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. *Id.* The *Barker* Court further indicated that none of these four factors are regarded as "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial" but, rather, "are related factors and must be considered together with such other circumstances as may be relevant." *Id.* at 533.

■ *United States v. MacDonald*, 456 U.S. 1 (1982) provides further guidance for our analysis. There the Supreme Court noted that the sixth amendment right to a speedy trial is not primarily intended to prevent prejudice to the defense caused by the mere passage of time from the commission of the crime until trial; this defense interest is primarily protected by the due process clause and by statutes of limitations.

> The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by *arrest* and the presence of unresolved criminal charges.

*Id.* at 8 (emphasis added). In summary, we must examine the particular facts and circumstances surrounding the ten month delay in bringing Holliday to trial measured from the date of his arrest using the "balancing test" of *Barker* as refined by *MacDonald*.

## I. Length of Delay.

Approximately six months elapsed from the date of Holliday's arrest until the preliminary hearing. Thereafter, another period of approximately four months elapsed until the trial. The five month period that elapsed between the date of the crime and the date of the arrest is not counted in evaluating sixth amendment claims to a speedy trial. "[T]he Sixth Amendment does not apply to the period before a defendant is indicted, arrested, or otherwise officially accused." *MacDonald*, 456 U.S. at 6.

"When the delay is so protracted as to be 'presumptively prejudicial', the first factor becomes a 'triggering mechanism' which necessitates 'inquiry into the other factors that go into the balance.'" *Fowlkes*, 218 Va. at 766, 240 S.E.2d at 664 (citing *Barker v. Wingo*, 407 U.S. at 530). The Commonwealth argues that a ten month delay was not unduly long and accordingly that an inquiry into the other *Barker* factors is not "triggered." We disagree. Where, as here, the accused is continuously held in custody and available for trial and the Commonwealth has secured continuances resulting in a ten month delay from arrest to trial, a further inquiry is mandated.

## II. Reason for Delay.

"[W]hen a defendant challenges the delay as unreasonable, the burden devolves upon the Commonwealth to show, first, what delay was attributable to the defendant and not to be counted against the Commonwealth and, second, what part of any delay attributable to the prosecution was justifiable." *Fowlkes*, 218 Va. at 767, 240 S.E.2d at 664.

The Commonwealth, in its brief, asserts that the hostage situation at Mecklenburg Correctional Center was in part responsible for the delay because Holliday, who was involved in that crisis, had to be moved to a different facility for a "cooling off" period. There is a brief reference to this situation in the record, but details are missing. Holliday, at oral argument, did not contest the existence of such a situation. Nevertheless, we do not believe that the conditions at Mecklenburg should be weighed against Holliday because the Commonwealth does not maintain that Holliday caused or contributed to the disturbances at Mecklenburg or that

the conditions at the facility actually prevented an earlier trial date for him.

The record does reflect that the preliminary hearing was continued three times on motions made by the Commonwealth. The record is silent as to the reason for these continuances and does not reflect that they were granted over Holliday's objection. We confine our review to the record that comes before us. "[W]ithout anything in a court order or elsewhere in the record to show that the defendant agreed to or concurred in the delay of his trial, the delay must be attributed to the Commonwealth . . . ." *Godfrey v. Commonwealth*, 227 Va. 460, 463, 317 S.E.2d 781, 783 (1984) (citing *Walker v. Commonwealth*, 225 Va. 5, 11-12, 301 S.E.2d 28, 31 (1983)).

The Commonwealth maintains that if the delay is attributed to it, its action should not be weighed "heavily" in the *Barker* balancing test as there is no indication of deliberate misconduct by the prosecution. We agree. The *Barker* Court noted that different weights should be assigned to different reasons for delay.

A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.

*Barker*, 407 U.S. at 531. Specific reasons for the continuances and the delay from preliminary hearing until the trial are not found in the record. The record is sufficient, however, for us to conclude that there was no deliberate misconduct or attempt to hamper the defense. The witnesses for the Commonwealth were known to Holliday and available to him. Holliday's only witness was a fellow inmate who remained available at trial and more importantly was called as a "character" witness to testify to the condition of the institution and the conduct of the personnel toward the inmate population at the time of the crime. We perceive no articulable advantage or disadvantage gained or suffered by either party as a result of the delay. The memory of the witnesses was never a factor in the case. Accordingly, while we view the reason for the delay as a factor to be weighed against the Commonwealth, we

grant it only negligible weight in the application of the *Barker* balancing test.

## III. Assertion of the Right.

We note again that Holliday was not appointed an attorney until after the Commonwealth was granted two continuances. The record does not reflect that the attorney was advised of the earlier continuances in advance of the Commonwealth's final motion for a continuance. Furthermore, the record is silent as to the reasons for the delay between the preliminary hearing and the trial. We must assume, therefore, that the defendant remained silent and did not demand a trial earlier.[1] As pointed out by Justice Poff in *Fowlkes*, Virginia has renounced the "demand rule" which would result in a waiver of the speedy trial claim unless a specific demand for a trial was made, and in so doing "foreshadowed *Barker* by nearly three decades." *Fowlkes*, 218 Va. at 769, 240 S.E.2d at 666. While the failure to demand a speedy trial is not a factor which, standing alone, will defeat a constitutional speedy trial claim, nonetheless, it is a factor which must be considered. *Barker*, 407 U.S. at 530. In this case, the defendant's failure to object to the continuances granted on the motion of the Commonwealth is mitigated by the late appointment of counsel; there is, however, no reason in the record why a demand for trial was not made after December 13, 1984. For these reasons, the defendant's failure to assert his right to a speedy trial must be weighed against him, although, because of the mitigating circumstances, we assign it only negligible weight.

## IV. Prejudice.

In weighing the prejudice factor, we note that at oral argument Holliday conceded that he could not affirmatively demonstrate prejudice as a result of the delay. The *Barker* Court identified three types of interests safeguarded by the sixth amendment right to speedy trial: (1) preventing oppressive pretrial incarceration; (2) minimizing anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired. *Barker*, 407

---

[1] Counsel for Holliday asserted at oral argument that he raised the speedy trial claim at the preliminary hearing; the record of the district court, however, is silent in this regard.

U.S. at 532. In *Barker* the Court noted that the third interest was the most serious: "[T]he inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past." *Barker*, 407 U.S. at 532. Subsequently, in *MacDonald* the Court shifted the speedy trial emphasis from the third to the first and second interests, noting that the prejudice caused the defense due to the passage of time falls more properly under the due process clause. *MacDonald*, 456 U.S. at 8.

In considering the first interest, oppressive pretrial incarceration, we again note that during the entire period in question Holliday was an inmate of a penal institution as a result of a conviction for an unrelated offense. No argument is made and the record does not reflect that one could reasonably be made that Holliday's pretrial incarceration was attributable solely to the charge pending against him. Just because Holliday was incarcerated on another charge does not mean, however, that he did not suffer from "undue and oppressive incarceration prior to trial" as a result of the delay. In *Smith v. Hooey*, 393 U.S. 374 (1969), the Supreme Court noted that in such circumstances the defendant would lose the possibility of receiving a sentence at least partially concurrent with the one he is serving. Moreover, in such cases "the duration of his present imprisonment may be increased, and the conditions under which he must serve his sentence greatly worsened by the pendency of another criminal charge outstanding against him." *Id.* at 378.

In considering the second interest, minimizing the anxiety and concern of the accused during the pretrial delay, the fact that Holliday was incarcerated on another charge likewise does not terminate our inquiry. We presume that the pending unresolved charge against him caused him some degree of anxiety and concern. Such anxiety and concern can be presumed to be common to anyone openly subject to a criminal proceeding. *See id.* at 379. Nonetheless, the *MacDonald* Court pointed out that "[a]rrest is a public act that may seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his fam-

ily and his friends." *MacDonald*, 456 U.S. at 8 (quoting *United States v. Marion*, 404 U.S. 307, 320 (1971)). There is no evidence in the record before us that any of these considerations are applicable to Holliday's speedy trial claim. The record is devoid of evidence that Holliday lost employment within the penal institution or sought employment and was refused. He was appointed counsel to represent him without a drain on his financial resources. There is no evidence that his relationships with friends or family were altered or that his life had been disrupted in any significant way. Furthermore, Holliday makes no such allegations in this appeal.

Finally, we consider the third interest, the possibility that Holliday's defense was impaired. As we previously noted, the Commonwealth's witnesses were known and available to Holliday during the entire period of the delay. Furthermore, Holliday does not assert and the record does not indicate that the delay caused the memory of his witnesses to fade or rendered them unable to testify on his behalf.[2] In fact, the only witness called by Holliday was called as a "character" witness to testify to the condition of the institution and the conduct of the personnel toward the inmate population at the time of the crime. Even assuming that this witness testified in some manner to establish a defense to the charge on behalf of Holliday, the record of his testimony reveals no difficulty on his part in remembering the events about which he testified. Accordingly, we find no actual prejudice. When we consider the totality of the "prejudice" factor in light of the three speedy trial interests previously identified, we resolve this interest in favor of the Commonwealth.

Having identified and quantified the four components of the *Barker* balancing test as they relate to Holliday's claim, we conclude that his claim must fail. First, the length of the delay, while perhaps unnecessary and a factor to be weighed against the Commonwealth, was not "extraordinary," certainly not of the magnitude of the five year delay in *Barker*.[3] Second, there was no showing that the delay was the result of intentional misconduct by the Commonwealth. Third, the prejudice to Holliday was minimal. Fi-

---

[2] We recognize, however, that loss of memory "is not always reflected in the record because what has been forgotten can rarely be shown." *Barker*, 407 U.S. at 532.

[3] Nothing herein should be construed as supporting a conclusion that a ten month delay in bringing a defendant to trial will never result in a finding of a speedy trial deprivation.

nally, Holliday was represented by counsel beginning December 13, 1984. No question is raised as to the competency of counsel. The record shows no action taken between December 13, 1984, and July 14, 1985, when the trial commenced, that could be construed as the assertion of a speedy trial right. For these reasons, while we do not condone the delay in bringing Holliday to trial, we conclude that he was not denied his constitutional rights to a speedy trial. Accordingly, the judgment is affirmed.

*Affirmed.*

Cole, J., and Hodges, J., concurred.