**Alexandria**

MICHAEL J. KELLEY, a/k/a

MICHAEL J. KELLY

v.

COMMONWEALTH OF VIRGINIA

No. 0773-92-4

Decided January 11, 1994

---

![redacted bars]

COUNSEL

Gilbert K. Davis, for appellant.

H. Elizabeth Shaffer, Assistant Attorney General (Stephen D. Rosenthal, Attorney General, on brief), for appellee.

OPINION

**COLEMAN, J.**—In this criminal appeal, we hold that Michael J. Kelley was not denied his Sixth Amendment right to a speedy trial when a delay in prosecuting him that was attributable to the Commonwealth caused the prosecution's main witness to lack independent recollection at trial of the events surrounding Kelley's DUI arrest. We base our holding on the fact that Kelley has failed to show that the witness's lack of independent recollection prejudiced his defense. We also hold that the evidence was sufficient to sustain Kelley's conviction for DUI.

Early in the morning of November 25, 1990, Trooper Allen W. Bacote stopped and arrested Kelley for driving under the influence. Bacote transported Kelley to the Fairfax ASAP room where Elizabeth Crouch administered an alcohol breath test. The test results showed that Kelley had a blood alcohol concentration of .20 percent.

Kelley's trial was set for January 17, 1991, in the Fairfax County General District Court. On that date, the case was continued, on Kelley's motion, to February 14, 1991. On February 14, the trial was continued on the Commonwealth's motion to December 19, 1991, because the Commonwealth's primary witness, Trooper Bacote, had been called to military duty in the Persian Gulf. Bacote returned from the Persian Gulf in May, 1991, and returned to work in June, 1991. Neither Kelley nor the Commonwealth's attorney requested an earlier trial date; however, insofar as the record shows, neither Kelley nor the Commonwealth's attorney knew that Trooper Bacote had returned to work as a police officer.

On December 19, 1991, Kelley was convicted in the general district court of driving under the influence. On appeal to the circuit court, Kelley moved to dismiss the charges on the ground that he had been denied his Sixth Amendment right to a speedy trial. A hearing was held on February 28, 1992, and the trial judge denied Kelley's motion. Trial was set for March 19, 1992.

At both the pretrial hearing and at trial, Trooper Bacote testified that he had no independent recollection of having stopped and arrested Kelley apart from the notes that he recorded shortly after the arrest. Bacote wrote his notes the same day as the arrest on a standard "DUI Arrest Notes" form and an "Implied Consent Law" form. Bacote identified the handwriting on both forms as his and testified that he had made no changes in his notes after the offense. He stated that he used the same forms and procedures in all DUI arrests.

Bacote explained that he knew Kelley's breath test had been taken at the Fairfax ASAP room because that was the only place he took arrestees to be tested. He identified his initials on Kelley's Certificate of Analysis, which contained the date, November 25, 1990, the same date as Kelley's arrest. Bacote had no independent recollection of Kelley being the person that he had arrested on November 25, 1990. He testified, however, that he had never arrested anyone else named Michael J. Kelley on any other occasion. At trial, Bacote's notes were introduced into evidence over Kelley's objection as past recollection recorded.

Bacote, reading from his notes, testified that on November 25, 1990, at 6:30 a.m., he observed Kelley's vehicle pass his patrol car at a high rate of speed on Interstate 95 in Fairfax County. He paced Kelley for two-tenths of a mile at 75 miles per hour in a 55 mile-per-hour zone. Bacote observed Kelley's car veer onto the right shoulder, almost striking the guardrail. After Bacote stopped Kelley, Bacote approached Kelley's vehicle. Bacote smelled a strong odor of alcohol about the vehicle and about Kelley. Kelley told Bacote that he had not been drinking since 11:30 p.m. the night before. Kelley also said, "I'm just tired. I'm trying to get home. I know I was weaving, I'm not drunk." Kelley performed several field sobriety tests and failed all of them. Bacote offered Kelley the field alcosensor test, but he refused it. Bacote testified that he read Kelley the implied consent law and that Kelley elected to take the breath test. Bacote's notes verified that he advised Kelley of the implied consent law.

Kelley was taken to the Fairfax ASAP room, where, at approximately 7:40 a.m., Elizabeth Crouch administered a breath test. Crouch, who remembered administering the test to Kelley, testified that she detected a heavy odor of alcohol from Kelley and that his face and eyes were red. Although Bacote was not able to identify the defendant at trial as the same person he had stopped and charged with DUI, Elizabeth Crouch identified the defendant as the same person

that Trooper Bacote brought to her for the breath test on November 25, 1990, identified as Michael Kelley. She testified that Kelley told her that he had his last alcoholic drink at 11:00 p.m. the night before and that he expressed disbelief when his test results read .20 percent. At the conclusion of the trial, the judge found Kelley guilty of driving under the influence.

## I. SPEEDY TRIAL

 "[T]he right to [a] speedy trial is a more vague concept than other procedural rights [under the Constitution]. It is . . . impossible to determine with precision when the right has been denied." *Barker v. Wingo*, 407 U.S. 514, 521 (1972).[1] The determination of whether an accused has been denied the constitutional right to a speedy trial requires "a difficult and sensitive balancing process" in which the court examines on an *ad hoc* basis the conduct of both the state and the accused which led to a delay in prosecution. *Id.* at 530, 533; *Fowlkes v. Commonwealth*, 218 Va. 763, 766, 240 S.E.2d 662, 664 (1978); *Holliday v. Commonwealth*, 3 Va. App. 612, 616, 352 S.E.2d 362, 364 (1987). Under this balancing test, four factors are to be considered in evaluating a speedy trial claim: "(1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right [to a speedy trial]; and (4) prejudice to the defendant." *Holliday*, 3 Va. App. at 616, 352 S.E.2d at 364. None of the four factors is either a necessary or sufficient predicate to the finding of a constitutional violation; they are related factors that "must be considered together with such other circumstances as may be relevant." *Barker*, 407 U.S. at 533; *Holliday*, 3 Va. App. at 616, 352 S.E.2d at 364.

## (1) LENGTH OF THE DELAY

██ The length of the delay is the "triggering mechanism" for speedy trial analysis. *Barker*, 407 U.S. at 530. Unless there is sufficient delay to be "presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id.; see also Fowlkes*, 218 Va. at 766, 240 S.E.2d at 664. "[T]he length of [the]

---

[1] The Virginia Code contains two speedy trial provisions that establish periods of limitations for the prosecution of misdemeanors. Code § 19.2-8 requires that, except for certain exceptions, "[a] prosecution for a misdemeanor . . . shall be commenced within one year next after there was cause therefor." Code § 19.2-243 provides a limitation for the period between conviction of a misdemeanor in general district court and trial *de novo* in the circuit court. Because the speedy trial statutes do not provide a limitation for the time between commencement of prosecution of a misdemeanor and trial in general district court, these statutes do not apply. Therefore, the sole question is whether Kelley was denied a speedy trial under the Sixth Amendment.

delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of [each] case." *Barker*, 407 U.S. at 530-31 (footnote omitted). A defendant must establish that, under the particular circumstances of his case, the length of the delay presumptively "was so detrimental as to have endangered his right to a fair trial." *Beachem v. Commonwealth*, 10 Va. App. 124, 131, 390 S.E.2d 517, 520 (1990). When the charge is for a misdemeanor or lesser offense, the length of delay that will be tolerated is less than that when the charge is for a more serious crime. *Barker*, 407 U.S. at 531.

Kelley was arrested on a misdemeanor charge on November 25, 1990. His trial in general district court was scheduled for January 17, 1991. Due to a series of continuances, the trial did not take place until December 19, 1991, thirteen months after Kelley was charged.

We accept the Commonwealth's concession that part of the delay in this case, during which time the Commonwealth could have brought Kelley to trial earlier, is sufficient to trigger further inquiry into whether Kelley was denied his constitutional right to a speedy trial.

### (2) REASON FOR THE DELAY

When a defendant raises the presumption of prejudicial delay, the burden shifts to the "Commonwealth to show, first, what [part of the] delay was attributable to the defendant and, . . . second, what part of any delay attributable to the [Commonwealth] was justifiable." *Fowlkes*, 218 Va. at 767, 240 S.E.2d at 664; *Holliday*, 3 Va. App. at 617, 352 S.E.2d at 365. The weight given to the length of the delay depends upon the reason for the delay. *Barker*, 407 U.S. at 531. For example, a deliberate attempt to delay by the prosecutor in order to hamper the defense should be given greater weight than a more neutral reason, such as negligence or overcrowded courtrooms. *Id.* On the other hand, any period of delay in bringing the defendant to trial that is attributable to the defendant cannot be counted against the state in determining whether the delay was unreasonable. *Id.*; *Taylor v. Commonwealth*, 12 Va. App. 425, 428, 404 S.E.2d 86, 87-88 (1991); *Shearer v. Commonwealth*, 9 Va. App. 394, 399, 388 S.E.2d 828, 830 (1990).

The first delay in bringing Kelley to trial occurred in general district court when the case was continued from January 17, 1991, to February 14, 1991, on Kelley's motion. This period of delay cannot be attributed to the Commonwealth. *See Shearer*, 9 Va. App. at 400, 388 S.E.2d at 830-31. Similarly, the Commonwealth was justified in re-

questing a continuance for the period in which Trooper Bacote, their primary witness, was called to military duty in the Persian Gulf. *See Barker,* 407 U.S. at 531. However, while a continuance was justified, the length of the delay was unnecessary. Bacote, who was unavailable to testify at the trial scheduled for February, 1991, returned from the Persian Gulf in June, 1991, and resumed his trooper's duties. Nevertheless, Kelley's trial date remained scheduled for December 19, 1991. Kelley made no request for an earlier trial date. Nothing in the record indicates that he knew Bacote was available, and we attribute no fault to him for failing to request a speedy trial. The Commonwealth offers no justification for the six-month delay occurring after Bacote became available to testify, other than the trial had been rescheduled for December 19, 1991. The burden rests upon the Commonwealth to bring a person charged with a crime to trial within a reasonable time. Accordingly, we weigh the six-month delay after Bacote returned from active duty in Kelley's favor.

## (3) ASSERTION OF THE RIGHT

Although the defendant's failure to raise a speedy trial claim does not constitute a waiver, the fact that the defendant asserted or failed to assert his right to a speedy trial is one factor to be considered. *Fowlkes,* 218 Va. at 768-69, 240 S.E.2d at 665. The fact that a defendant asserts his speedy trial right is entitled to "strong evidentiary weight" in determining whether he was deprived of the right. *Barker,* 407 U.S. at 521-22, 532-33. However, we do not consider the fact that Kelley delayed requesting a speedy trial as weighing against Kelley's speedy trial claim because he had no reason to believe that Trooper Bacote's situation had changed. Kelley asserted his Sixth Amendment right by a motion to dismiss in the circuit court after he had become aware that the delay was unnecessary.

## (4) PREJUDICE

The fourth factor to be considered in balancing the speedy trial concerns is prejudice to the defendant. In considering prejudice to a defendant, the Supreme Court has identified three interests protected by the Sixth Amendment speedy trial right: (1) preventing oppressive pretrial incarceration; (2) minimizing the accused's anxiety; and (3) limiting the possibility that the defense will be impaired. *Id.* at 532. Considering the first interest, Kelley was at no time incarcerated during the period of delay. As to the second concern, Kelley makes no claim of suffering an abnormal degree of anxiety while awaiting his

trial. While anyone who is subject to a criminal prosecution will commonly suffer anxiety and concern about the outcome, Kelley makes no mention that the six-month delay caused him any distress or that the travails associated with awaiting trial were stressful or disruptive.

■ In regard to the third interest, Kelley contends that his ability to defend himself was substantially impaired when Trooper Bacote, a material witness, could not recall any of the facts surrounding Kelley's arrest. As to proving that the delay impaired Kelley's ability to defend against the charges, he bears the burden of demonstrating actual prejudice, and not its mere possibility. Proving only a "possibility of prejudice is not sufficient to support" a speedy trial right violation. *United States v. Loud Hawk,* 474 U.S. 302, 315 (1986).

Assuming that Trooper Bacote's memory loss was caused by the six-month delay in trying Kelley's case after Bacote returned and was available as a witness, no actual prejudice to Kelley's defense can be inferred from that fact alone. When a prosecution witness loses his memory, the state may be prejudiced. "[D]elay is a two-edged sword. It is the Government that bears the burden of proving its case beyond a reasonable doubt. The passage of time may make it difficult or impossible for the Government to carry this burden." *Id.* A defendant may also be prejudiced by a prosecution witness's loss of memory. The witness may be unable to recall on cross-examination facts favorable to the defendant's theory of the case which, had the witness been able to recall them, would have supported the defense. In addition, a witness's lack of memory may effectively thwart impeachment. However, without some reason to believe that such prejudice has occurred, we cannot speculate that it did.

■ Even if the memories of the defendant's own witnesses are diminished, the effect of that loss on the defendant's case must be demonstrated before prejudice may be found. *See Miller v. Commonwealth,* 217 Va. 929, 937, 234 S.E.2d 269, 274 (1977), *cert. denied,* 434 U.S. 1016 (1978). The extent to which this prejudice must be shown is tempered, of course, by recognition of the fact that "what has been forgotten can rarely be shown." *Barker v. Wingo,* 407 U.S. at 532. However, a defendant asserting a speedy trial violation must at least show a factual basis for believing that a prosecution witness's loss of memory may have adversely affected the defense.

In this case, Kelley offered no defense. He put on no evidence and moved to strike the evidence only for reasons arising from Bacote's lack of recollection. Kelley does not suggest a scenario by which a "possibility" of impairment of his defense occurred. While the absence or loss of memory of a witness may impair a defense, no evidence of that is present here. *See Barker,* 407 U.S. at 532. In the absence of some showing or suggestion by Kelley that facts or evidence favorable to him existed which Kelley had forgotten or could not recall, it is mere speculation that Bacote's memory loss impaired Kelley's defense. We find no basis for Kelley's assertion that Trooper Bacote's memory lapse prejudiced his defense. We resolve the prejudice factor, in light of these three interests, in the Commonwealth's favor.

Thus, under the *Barker v. Wingo* four-part test, we hold that (1) the length of the delay warranted further inquiry, (2) while no government misconduct caused the six-month delay, the Commonwealth did not have a legitimate reason for not bringing Kelley's case to trial earlier after Trooper Bacote's return from the Gulf, (3) Kelley timely asserted his speedy trial right, and (4) Kelley has failed to show that the delay impaired his defense or actually prejudiced his case. Accordingly, Kelley was not denied his Sixth Amendment right to a speedy trial.

## II. SUFFICIENCY OF THE EVIDENCE

When an appellant challenges the sufficiency of the evidence to sustain his conviction, we review the evidence in the light most favorable to the Commonwealth and grant to it "all reasonable inferences fairly deducible therefrom." *Higginbotham v. Commonwealth,* 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).

Because Trooper Bacote could not independently recall the facts surrounding his arrest of Kelley, the Commonwealth relied primarily on Trooper Bacote's notes to prove that Kelley was driving while intoxicated. Bacote's notes were admissible as an exception to the hearsay rule as past recollection recorded. *See* Charles E. Friend, *The Law of Evidence in Virginia* § 3-7 (4th ed. 1993). The requirements for use of substantive evidence under this exception are:

(1) [T]he witness must have had firsthand knowledge of the event, (2) the written statement must be an original memorandum made at or near the time of the event and while the witness had a clear and accurate memory of it, (3) the witness must lack a pre-

sent recollection of the event, and (4) the witness must vouch for the accuracy of the written memorandum.

*Scott v. Greater Richmond Transit Co.*, 241 Va. 300, 304, 402 S.E.2d 214, 217 (1991). *See McCormick on Evidence* § 299 (3d ed. 1984).

The Commonwealth clearly meets the requirements to admit Trooper Bacote's original notes into evidence, and the defendant does not challenge their admission. Kelley challenges the sufficiency of their content along with the other evidence to prove that he was the person who was operating the motor vehicle or that he was intoxicated at the time. Bacote's notes establish that a person identified by him as Michael J. Kelley was operating a motor vehicle on Interstate 95 in Fairfax County, twenty miles over the speed limit, when he swerved onto the shoulder and nearly struck a guard rail. Kelley smelled strongly of alcohol, and he had a red face and eyes. Prior to being arrested, Kelley failed a range of field sobriety tests that Bacote administered. At the Fairfax ASAP room, a breath test was administered to the person that Bacote had arrested and identified as Kelley, and the breath test results read .20 percent. Bacote's recorded evidence establishes the *corpus delicti*—that is, that a person that he identified as Michael J. Kelley was operating a motor vehicle in Fairfax County while intoxicated. Bacote's notes establish that Kelley was advised of his right to a preliminary blood or breath test in compliance with Code § 18.2-267. Bacote testified, based on his notes, that "the field alcosensor was offered, but refused."

Elizabeth Crouch, ASAP breathalyser operator, testified that the defendant, Michael J. Kelley, was the same person Bacote had arrested and brought before her to administer a breath test on November 25, 1990. She also testified without challenge that Kelley stated "he had . . . his last drink at approximately 11:00 p.m. the night before." Her testimony satisfied the Commonwealth's burden of proving beyond a reasonable doubt that the defendant is the person who Trooper Bacote arrested and charged with the offense.

Bacote also complied with the implied consent law. The implied consent form contained within Bacote's notes states that twenty-five minutes after the arrest, Bacote informed Kelley of his rights to either a blood or breath test under the implied consent law.

Accordingly, the evidence was sufficient to sustain Kelley's conviction.

*Affirmed.*

Barrow, J., and Koontz, J., concurred.