COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:    Judges Huff, Fulton and White
Argued by videoconference


RONNY L. JERNIGAN

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0259-22-1                      JUDGE GLEN A. HUFF
                                                    APRIL 4, 2023
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
James C. Lewis, Judge

Kristin Paulding (7 Cities Law, on brief), for appellant.

David A. Mick, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


On September 1, 2021, in the City of Virginia Beach Circuit Court (the "trial court"), Ronny

L. Jernigan ("appellant") was convicted of forcible sodomy, robbery, and abduction with intent to

defile for the November 6, 1992 attack on D.M.[1]  He now appeals those convictions to this Court.

He first assigns error to the trial court's denial of his motion to dismiss based on the

Commonwealth's 26-year delay in indicting him.  He also contends that the trial court erred in

denying his motion to dismiss based on an alleged violation of his constitutional right to a speedy

trial during a year-and-four-month delay from April 2020 to August 2021.  Finally, he argues there

was insufficient evidence to convict him of forcible sodomy, robbery, and abduction with intent to

defile.  Finding no error, this Court affirms each of appellant's convictions.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413.

[1] Initials are used to protect the privacy of the victim.

BACKGROUND

This Court views "the evidence in the light most favorable to the Commonwealth, the prevailing party at trial" and "accord[s] the Commonwealth the benefit of all inferences fairly deducible from the evidence." *Morrisette v. Commonwealth*, 264 Va. 386, 389 (2002).

On November 6, 1992, around 7:30 p.m., D.M. was leaving a Video Express in Virginia Beach when a man approached her from behind and put a knife to her throat. He ordered her into the passenger seat of her car, and he sat in the driver's seat. He then drove to a church parking lot where he ordered D.M. to take off her clothes and perform fellatio on him. After he ejaculated, he commanded D.M.—still unclothed—to exit the car and lie face down on the pavement as he drove off in her car.

She quickly ran to a nearby house, and the occupants called the police. The police escorted D.M. to the hospital where a doctor and nurse used a physical evidence recovery kit ("PERK")[2] to collect foreign DNA from D.M.'s lips and lip area. D.M. described her attacker as a 5'10" white male with a medium muscular build, possibly a mustache and scruffy beard, and a tattoo depicting flowers or a snake on his right forearm. She admitted, however, that she did not closely study her attacker because he ordered her not to look and she feared for her life.

Police found D.M.'s stolen car later that night, and a forensic specialist recovered fingerprints. Upon receipt of her car from the police, D.M. discovered that the clothes she had worn during the attack were still in the car, so she turned them over to the police. Miriam Vanty, a forensic biologist, tested the foreign DNA from both the clothes and the PERK using the only available technique at the time: restriction fragment length polymorphism. This technique requires

---

[2] To collect DNA using a PERK, a doctor and nurse will first examine then swab the victim's body. Each swab is placed in a labeled tube and preserved individually. The hospital staff places the swabs in the PERK box and seals the box upon completion. After sealing the PERK, the staff gives it to law enforcement who keep it refrigerated.

significantly more DNA than the polymerase chain reaction ("PCR") technique typically used today. Vanty could not develop a foreign DNA profile from the small amount of recovered DNA. Officers then returned D.M.'s clothes to her.

The detective assigned to the case, Detective David Ford, developed a list of eight or nine suspects. Ford investigated appellant as one of those suspects based on a Crime Solvers tip that appellant matched the attacker's description. When talking to appellant the day after the assault, Ford noted that appellant did in fact fit D.M.'s description because he had a stocky, muscular build, a mustache, and tattoos. However, appellant's tattoos were on his left arm rather than the right, and he was 5'5" rather than 5'10".

During Ford's questioning, appellant admitted to having rented from the Video Express in the past and driving by the Video Express around 2:30 p.m. on the day of the attack to pick up a check from his employer. Appellant claimed he was at church that night. Ford never confirmed this alibi. In the fall of 1993, Ford asked appellant to provide a DNA sample, but appellant declined. Shortly thereafter, Ford transferred to the narcotics division, leaving the case to be reassigned.

The case went cold until 2016 when Detective Angela Murphy reopened it. Although many pieces of evidence were missing upon reopening the case,[3] the PERK had been preserved, so

---

[3] The following pieces of evidence could not be found in 2016: the crime scene search report, D.M.'s clothing worn on the night of the attack, which had been returned to her, a lab request for the clothes, a news release of the attack, the latent fingerprint sheet, a pawn sheet tracking any items sold by a different suspect named David Holmes, D.M.'s written statement, Holmes's written statement, the outcome of a photo lineup including Holmes, a transcript of D.M.'s taped statement, a credit card receipt from Big Lots of a purchase subsequent to the attack made with D.M.'s stolen credit card, a copy of D.M.'s driver's license, the receipts from Video Express, and Ford's investigative notes. Appellant only identified this evidence as being lost between the offense and reopening the case. He does not point to any evidence that was lost after his indictment.

Murphy sent the kit to be tested with the new PCR technology.[4] Vanty could now develop a DNA profile separate from D.M.'s to compare against suspects' DNA. Based on the new DNA evidence, Murphy eliminated two previous suspects before testing appellant's DNA in February of 2017.

After comparing the foreign DNA profile to appellant's, appellant could not "be eliminated as a contributor of the DNA." When the DNA from the lip sample and lip area sample were run separately, the odds of randomly selecting a matching DNA profile was "1 in 5.4 billion in the Caucasian population." When the samples from the lip and lip area were run together, the probability of randomly selecting a matching DNA profile increased to 1 in 7.2 billion[5] among all ethnic populations.

The Commonwealth indicted appellant on April 3, 2017, and arrested him on February 26, 2018. The initial trial date was set for April 25, 2018. From April 25, 2018, to April 28, 2020, appellant moved to continue the case at least six times and caused the trial to be rescheduled on other occasions. Appellant requested his first continuance because he had been diagnosed with pre-Alzheimer's disease and was waiting for results from a court-ordered mental health evaluation. Between the last motion to continue on January 13, 2020, and the rescheduled trial date of April 28, 2020, the COVID-19 pandemic hit the United States.

The Virginia Supreme Court issued its first COVID-19 emergency order on March 16, 2020, restricting "jury trials, subject to a defendant's right to a speedy trial." Order Declaring a Judicial Emergency in Response to COVID-19 Emergency, 1 (Va. Mar. 16, 2020).[6] The Court then

---

[4] PCR amplifies DNA so that a profile can be developed from an extremely small sample.

[5] The odds were actually greater than one in 7.2 billion, but the laboratory capped the odds at the world's population at the time of the test.

[6] Further references to the Supreme Court's first order and ensuing orders are to "emergency order" or "EDO of [date]." *See* EDO of Apr. 22, 2020, at 1 (referring to the Supreme Court's first three orders "collectively . . . as the 'Emergency Declaration Orders'").

twice extended this judicial emergency through May 17, 2020, overriding appellant's scheduled trial date. *See* EDO of Apr. 22, 2020, at 1.

Because of the COVID-19 pandemic, the trial court pushed appellant's case from April 28, 2020, to May 19, 2020. But on May 6, the Supreme Court suspended all criminal jury trials until June 7, 2020. *See* EDO of May 6, 2020, at 5. So, on May 18, the parties agreed to a new trial date of October 27, 2020.

The trial court received approval to restart jury trials on September 28, 2020, in accordance with the Supreme Court's June 22 emergency order. *See* EDO of June 22, 2020, at 5-6. Unfortunately, the trial court closed October 26 to October 30, 2020, because of a COVID-19 outbreak. The court consequently rescheduled appellant's trial for May 17, 2021. But when there were not enough jury slots on May 17, the parties agreed to continue the case to August 30, 2021.

Appellant filed a motion to dismiss on May 13, 2021, asserting that the Commonwealth had violated his constitutional right to a speedy trial. He alleged that the delay starting April 28, 2020, was presumptively too long and that it prejudiced him because his health declined and witnesses' memories faded. The court denied the motion but gave appellant priority on the docket for August 30.

Appellant's jury trial began on August 30, 2021. D.M. testified and could recount the events that occurred on the night of the attack, but she had trouble remembering certain details, such as the attacker's statements during the drive to the parking lot and the name of the Video Express. After three days, the jury found appellant guilty of one count of forcible sodomy, one count of robbery, and one count of abduction with intent to defile. He received three life sentences.

ANALYSIS

Appellant alleges that the trial court erred in denying his motions to dismiss because the Commonwealth violated his due process rights by waiting 26 years to indict him and also violated

- 5 -

his constitutional right to a speedy trial by delaying his trial during the pandemic. He finally alleges that the trial court erred in failing to set aside the verdict because of insufficient evidence to prove he was D.M.'s attacker. This Court affirms the trial court's judgment and upholds appellant's convictions.

## I. Pre-Indictment Delay

Appellant first argues that the trial court erred when it denied his motion to dismiss because the 26-year pre-indictment delay violated his due process rights. This Court reviews such constitutional issues de novo. *Shivaee v. Commonwealth*, 270 Va. 112, 119 (2005). "[T]he Court is bound by the trial court's findings of historical fact unless they are plainly wrong or without evidence to support them." *McGee v. Commonwealth*, 25 Va. App. 193, 198 (1997) (en banc).

"[T]o gain dismissal of criminal charges because of pre-arrest or pre-indictment delay, a defendant must establish that '(1) the prosecutor intentionally delayed indicting [the defendant] to gain a tactical advantage *and* (2) the defendant incurred actual prejudice as a result of the delay.'" *Morrisette*, 264 Va. at 393 (second alteration in original) (quoting *United States v. Amuny*, 767 F.2d 1113, 1119 (5th Cir. 1985)). "The defendant bears the burden of proving both actual prejudice and improper purpose." *Id.* Therefore, if the defendant does not demonstrate that the prosecution intentionally delayed indictment to gain a tactical advantage, this Court need not reach the question of whether the defendant incurred actual prejudice. *See Anderson v. Commonwealth*, 48 Va. App. 704, 712 (2006).

Here, appellant contends that the Commonwealth gained a tactical advantage by letting the case go cold in the 1990s to allow DNA technology to advance. Appellant argues that Detective Ford intentionally failed to verify appellant's alibi, obtain a search warrant for appellant's DNA, compare appellant's fingerprints to those found in the car, and show appellant's tattoos to D.M. during the investigation in the 1990s. That way, when DNA technology did develop, any other

circumstantial evidence about appellant's whereabouts on November 6, 1992, would have disappeared.

Appellant's argument is unconvincing. The Commonwealth could not know that DNA technology would advance to the point that the small amount of DNA evidence recovered from the PERK would become useful. The Commonwealth is not so prescient. The evidence instead suggests that Ford investigated several suspects, including appellant, but never gathered enough evidence to make an arrest. When Ford transferred to a different division, no one else continued investigating the case, leaving it unsolved. The Commonwealth did not intentionally delay in indicting appellant; it merely could not indict until it had sufficient evidence. That sufficient evidence came in 2016 with the advancement of DNA technology.

Because appellant failed to establish intentional delay, this Court does not address whether appellant suffered actual prejudice. This Court affirms the trial court's judgment in denying appellant's motion to dismiss for intentional pre-indictment delay.

## II. Constitutional Speedy Trial

Next, appellant argues that the trial court erred when it denied his motion to dismiss because the delays during the pandemic violated his constitutional right[7] to a speedy trial under both the United States and Virginia Constitutions. Appellant does not challenge the delays from February 28, 2018, to April 28, 2020, which came at his request, but instead challenges only those delays from April 28, 2020, to August 30, 2021.

Constitutional speedy-trial challenges "present questions of law reviewed *de novo* on appeal." *Ali v. Commonwealth*, 75 Va. App. 16, 33 (2022). "To the extent such review involves

---

[7] Appellant alleges only a constitutional violation, not a violation of his statutory speedy trial right under Code § 19.2-243.

underlying factual findings, those findings may not be disturbed unless 'plainly wrong' or 'without evidence to support them.'" *Id.* (quoting *Wilkins v. Commonwealth*, 292 Va. 2, 7 (2016)).

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. "Virginia's constitutional speedy trial right is coextensive with the federal right," so the two claims may be analyzed as one. *Ali*, 75 Va. App. at 34. This Court must balance four factors: (1) the "[l]ength of delay," (2) "the reason for the delay," (3) "the defendant's assertion of his right," (4) "and prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 530 (1972). "On appeal, a defendant must establish that 'on balance,' the factors 'weigh in his favor.'" *Ali*, 75 Va. App. at 35 (quoting *United States v. Thomas*, 55 F.3d 144, 148 (4th Cir. 1995)).

### A. *Barker*'s Four Speedy Trial Factors

#### 1. Length of Delay

"The length of the delay is to some extent a triggering mechanism." *Barker*, 407 U.S. at 530. "If the ensuing 'delay . . . [was] "so protracted as to be presumptively prejudicial," the first factor . . . necessitates inquiry in the other factors that go into the balance.'" *Miller v. Commonwealth*, 29 Va. App. 625, 632-33 (1999) (first and second alterations in original) (quoting *Beacham v. Commonwealth*, 10 Va. App. 124, 131 (1990)). "It is well established that delay 'approach[ing] one year' is 'presumptively prejudicial' and requires further review." *Ali*, 75 Va. App. at 35 (alteration in original) (quoting *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992)). "The delay is calculated from the time of arrest." *Id.*

Here, appellant challenges only the delay from April 28, 2020, to August 30, 2021—a time span of approximately 1 year and 4 months, or 489 days. Because the length of this delay is presumptively prejudicial, it triggers a full analysis of the other *Barker* factors.

2. <u>Reason for the Delay</u>

Under the second factor—reason for the delay—a court must determine two things: first, what delay is attributable to the Commonwealth, and second, if any Commonwealth delay is justifiable. *Beacham*, 10 Va. App. at 131-32. A continuance is attributable to the defendant if he requests it or agrees to it. *See, e.g.*, *Vermont v. Brillon*, 556 U.S. 81, 90 (2009) (requested continuance); *Arnold v. Commonwealth*, 18 Va. App. 218, 223 (1994) (agreed to a continuance).

After attributing delay either to the Commonwealth or the defendant, the court must determine if any Commonwealth delay is justifiable. *Fowlkes v. Commonwealth*, 218 Va. 763, 767 (1978). There are three categories of delay—deliberate, negligent, and valid—and each is weighted differently. A deliberate delay "to hamper the defense should be weighted heavily against the government." *Barker*, 407 U.S. at 531. A negligent delay, "such as . . . overcrowded courts[,] should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id.* "Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay." *Id.*

Certain routine delays[8] are attributable to the Commonwealth in the "ordinary course of the administration of justice." *Ali*, 75 Va. App. at 37. When delay in the ordinary course of the administration of justice is not caused "intentionally or negligently," it is justified as "valid and unavoidable." *Id.* at 45. This Court has also determined that "delay due to the pandemic [i]s valid, unavoidable, and outside the Commonwealth's control." *Id.* Thus, both delays in the ordinary course of the administration of justice and delays caused by the pandemic are fully justified.

---

[8] This type of delay would include, for example, the time between a defendant's arrest and first court appearance. *See generally Ali*, 75 Va. App. at 37.

a. Apportionment of Delay

Here, appellant contends that the Commonwealth delayed his trial for an extra year and four months during the pandemic. From March 16, 2020, to May 6, 2020, the Supreme Court limited jury trials but did not stop them outright. Because jury trials could still be held from April 28 to May 6, this eight-day period is attributable to the Commonwealth in the ordinary course.

The Supreme Court halted all jury trials on May 6. The Commonwealth could not be expected to hold jury trials in contravention of the Supreme Court's orders, so delays during this prohibition period are attributable to the Commonwealth due to the pandemic. In this case, appellant did not agree to the 12-day delay from May 6, 2020, to May 18, 2020, so it is attributable to the Commonwealth rather than to appellant.

On May 18, appellant agreed to reschedule the trial until October 27, 2020. Accordingly— even though the trial court received approval of its jury trial resumption plan on September 28, 2020—the 162-day period from May 18 to October 27 is attributable to appellant.[9]

The trial court closed the week of October 27 because of a COVID-19 outbreak, so it rescheduled appellant's case to the next available trial date of May 17, 2021. The 202-day period between those dates is attributable to the Commonwealth due to the pandemic. *See id.* at 41 (distinguishing between delays in the ordinary course and those due to the pandemic when attributing delays to the Commonwealth). On May 17, 2021, the parties agreed to continue the case to August 30. Because appellant agreed to this 105-day delay, it is attributable to him rather than the Commonwealth.

---

[9] If appellant had not agreed to this continuance, the period from May 6, 2020, to September 18, 2020, would be attributable to the Commonwealth due to the pandemic, and the period from September 18, 2020, to October 27, 2020, would be attributable to the Commonwealth in the ordinary course.

In sum, out of the 489-day delay from April 28, 2020, to August 30, 2021, 267 days are attributable to appellant, 8 days are attributable to the Commonwealth in the ordinary course, and 214 days are attributable to the Commonwealth due to the pandemic.

### b. Justification for Delay Attributed to Commonwealth

Of the 222 days attributable to the Commonwealth, all are fully justified.

Delay in the ordinary course of administration of justice is typically valid and justified if not caused intentionally or negligently. *Id.* at 45. Here, there is no evidence or allegation that the Commonwealth intentionally delayed appellant's trial to gain some sort of tactical advantage or prevent appellant from preparing his case. There also is nothing to suggest that the Commonwealth acted negligently. The period of delay attributable to the Commonwealth for delay in the ordinary course is only eight days. This short length of time suggests that the Commonwealth attempted to promptly hold appellant's trial when not precluded from doing so by the pandemic and therefore was not negligent.

Because preventing the "'spread of COVID-19 is unquestionably a compelling [governmental] interest,'" the delays due to the pandemic are also justified. *Id.* at 43 (alteration in original) (quoting *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67-68 (2020) (per curiam)). The Commonwealth did not act improperly by promoting the health and safety of judicial personnel, who could have been exposed to COVID-19 if trials continued during the height of the pandemic or the local breakout in October 2021.

For these reasons, all delays attributable to the Commonwealth are justified. None count in favor of appellant.

### 3. Assertion of the Right

"The defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker*, 407 U.S. at

531-32. A defendant's assertion weighs less in his favor if the Commonwealth tries him soon after he asserts his right to a speedy trial. *See Shavin v. Commonwealth*, 17 Va. App. 256, 270 (1993). Similarly, a defendant's assertion "deserves less weight than that to which it would have been entitled if he had raised it . . . at a time before the pandemic severely limited the possibility that he could be tried promptly." *Ali*, 75 Va. App. at 46.

Rather than asserting his right to a speedy trial soon after the COVID-19 pandemic began, appellant waited until May 13, 2021. Although the trial court had received approval to resume jury trials in September 2020, the pandemic continued to affect daily life and judicial administration well into 2021. Appellant's assertion deserves less weight because he acted over a year after the Supreme Court's first emergency order.

Additionally, appellant agreed to continue the case to August 30, 2021, after he asserted his right to a speedy trial. A defendant seriously impaired by delay likely would not have agreed to wait three more months to have his case heard. Furthermore, the trial court responded to his assertion by giving the case priority on the docket for August. And he was indeed tried August 30, 2021, after the court prioritized his case.

Given those considerations, appellant's assertion of his right does not weigh heavily in his favor.

### 4. Prejudice to the Defendant

Appellant claims the post-indictment delay prejudiced him because the delay took a toll on his health as he was already 64 years old when it began. Appellant also claims that the delays prejudiced him because, with each passing year, witnesses' memories faded. He points to M.D.'s lapses of memory during her testimony as an example.

The constitutional speedy trial right protects three main interests: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the

possibility that the defense will be impaired." *Harris v. Commonwealth*, 258 Va. 576, 586 (1999) (quoting *Barker*, 407 U.S. at 532). "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.* (quoting *Barker*, 407 U.S. at 532).

"[I]f the Commonwealth bears no fault in the delay and proceeds 'with reasonable diligence,' then the defendant's 'speedy trial claim w[ill] fail . . . as a matter of course however great the delay, so long as [the defendant cannot] show specific prejudice.'" *Ali*, 75 Va. App. at 47 (second, third, and fourth alterations in original) (quoting *Doggett*, 505 U.S. at 656). "To prove specific prejudice under the third interest (limiting the possibility of impairing the defense), a defendant must show 'in what specific manner' factors such as missing witnesses, missing evidence, or improved access to counsel 'would have [impaired or] aided the defense.'" *Id.* at 49 (alteration in original) (quoting *United States v. Medina*, 918 F.3d 774, 782 (10th Cir. 2019)). To show specific prejudice for the first two interests, appellant "must establish a particularly prolonged or restrictive period of incarceration or a level of anxiety exceeding that faced by others awaiting trial." *Id.* at 48.

As to the third interest—preventing impairment of the defense—appellant has not articulated specifically how the delay impaired his defense. He primarily argues that witnesses' memories faded over the year and four months of pandemic delay yet cites only to M.D.'s testimony.

Appellant fails to show that M.D.'s memory faded during the year and four months of pandemic delay rather than the 26-year delay between the offense and arrest. He also does not explain any specific way in which M.D.'s lapses in her memory impaired his defense. He merely claims that her inability to remember certain details demonstrates how other witnesses similarly must have forgotten details over the period of delay. However, he has not identified any witnesses

who would have testified on his behalf in 2020 but could not in 2021 because of either a faded memory or an unavailability to testify.

Furthermore, appellant fails to specify evidence that either he or the Commonwealth lost from April 28, 2020, to August 30, 2021.[10] Nor has appellant explained how his failing health and pre-Alzheimer's diagnosis prejudiced him in preparing his defense. Appellant does not claim that his declining health during this period prevented him from consulting with legal counsel.

Just as with impairment of the defense, appellant must show specific prejudice under the first two claims of oppressive pre-trial incarceration and increased anxiety and concern. Appellant fails to explain with particularity how his declining health or the lapses in witnesses' memories prejudiced him. Therefore, appellant fails to establish any specific prejudice under this fourth factor.

### B. Overall Assessment

The delay from April 28, 2020, to August 30, 2021, a total of 489 days, is presumptively prejudicial under the first *Barker* factor, triggering an analysis of the other three factors. "None of the factors is either 'necessary or sufficient' to finding a violation." *Id.* at 35 (quoting *Kelley v. Commonwealth*, 17 Va. App. 540, 544 (1994)). Rather, "they are related factors that 'must be considered together with . . . other [relevant] circumstances.'" *Id.* (alterations in original) (quoting *Kelley*, 17 Va. App. at 544). In weighing the factors together, this Court holds that appellant's constitutional speedy trial right was not violated.

Of the 489-day delay, 222 days are attributable to the Commonwealth: of these, 8 days are attributable in the ordinary course and 214 days are attributable due to the pandemic. The delays in

---

[10] While the evidence missing from the file upon reopening the case may be relevant to appellant's first and third assignments of error, the missing evidence is not relevant to appellant's claim of prejudice because the Commonwealth lost the evidence before the post-indictment delays began.

the ordinary course of administration of justice are fully justified because appellant offers no evidence that the Commonwealth intentionally or negligently caused them. And the 214 days of delay due to the pandemic are fully justified because of an overriding concern for public health. This factor weighs against appellant's claims because it leaves no unjustified Commonwealth delays.

Nor does the third *Barker* factor weigh in favor of appellant. He did not assert his right until May 13, 2021—over a year after the Supreme Court's first emergency order in response to the COVID-19 pandemic—when the trial court was unable to try him quickly due to public health concerns. Even so, the trial court responded to appellant's assertion by prioritizing his trial at the next available trial date of August 30, 2021. Given appellant's delayed assertion and the trial court's prompt response, this factor does not weigh in favor of appellant. Appellant's assertion is even less convincing when considering that he agreed to continue the case after invoking his right to a speedy trial.

Finally, appellant has not shown specific prejudice under the fourth *Barker* factor. Appellant fails to mention specific witnesses he would have called but could no longer call because of faded memories or intervening deaths during the delay. Although he points to M.D.'s testimony as evidence that other witnesses' memories must have faded too, he has not established that her memory faded during the period of delay in question or that her lapses in memory prejudiced his defense in any way. Nor does he allege with specificity how his declining health over the pandemic delay prejudiced him either by preventing him from preparing his defense or by contributing to oppressive incarceration and anxiety.

When taken together, none of the factors weigh in favor of appellant, so this Court holds that appellant's right to a constitutional speedy trial was not violated.

### III. Sufficiency of the Evidence

Finally, appellant contends that the trial court erred when it denied his motion to set aside the verdict because there was insufficient evidence to prove his identity as the one who committed forcible sodomy, robbery, and abduction with intent to defile.

"On review of the sufficiency of the evidence, 'the judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "The question on appeal, is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Yoder v. Commonwealth*, 298 Va. 180, 182 (2019)).

Appellant argues that no reasonable trier of fact could have identified him as M.D.'s attacker based on the evidence presented. He points to the fact that the Commonwealth lost all evidence except the PERK, so the jury had to decide his innocence or guilt without a full picture of the facts, including a potential alibi defense. He also emphasizes that M.D. never identified him as her attacker; rather, the Commonwealth primarily relied on DNA evidence to place him at the scene of the crime. He alleges this evidence is insufficient to establish his identity as M.D.'s attacker.

This Court does not agree. Here, a jury could reasonably find that appellant was guilty based on the DNA evidence. When the two foreign DNA samples were run separately, the odds of finding a matching DNA profile were "1 in 5.4 billion in the Caucasian population." When the two foreign DNA samples were run together, the odds of finding a matching DNA profile were 1 out of the world's population, which at the time was 7.2 billion.

Although appellant was 5'5" rather than 5'10" and his tattoos were on the left arm rather than his right, M.D. feared for her life and abstained from studying her attacker's appearance after he warned her not to look. Moreover, appellant matched M.D.'s eyewitness description closely

enough to warrant a citizen to provide law enforcement with a Crime Solvers tip that appellant fit the attacker's description. A reasonable jury could consider and resolve the slight inconsistencies between M.D.'s description and appellant's appearance in light of the DNA evidence and still determine that appellant was M.D.'s attacker. *See Taylor v. Commonwealth*, 52 Va. App. 388, 395 (2008) (explaining that the standard of review for insufficiency claims "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony" (quoting *Kelly v. Commonwealth*, 41 Va. App. 250, 257-58 (2003) (en banc)). This Court accordingly affirms the trial court's denial of the motion to set aside the verdict.

CONCLUSION

For the foregoing reasons, this Court affirms appellant's convictions of forcible sodomy, robbery, and abduction with intent to defile.

*Affirmed.*