COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:    Chief Judge Decker, Judges Humphreys and O'Brien
Argued by videoconference


COMMONWEALTH OF VIRGINIA

                                  MEMORANDUM OPINION[*] BY
v.        Record No. 0197-21-2         CHIEF JUDGE MARLA GRAFF DECKER
                                       AUGUST 10, 2021

ZAVIA RAMON MURPHY


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
David E. Johnson, Judge

Maureen E. Mshar, Assistant Attorney General (Mark R. Herring,
Attorney General, on briefs), for appellant.

Tiffany K. Booker (The Booker Law Firm, on brief), for appellee.


Zavia Ramon Murphy (the defendant) was arrested and subsequently indicted for malicious

wounding and use of a firearm in the commission of that offense, in violation of Code §§ 18.2-51

and -53.1.  After being held for more than twelve months and then released on bond, the defendant

filed a pretrial motion to dismiss the charges on constitutional speedy trial grounds, due in part to

delays caused by the COVID-19 pandemic.  After a hearing, the circuit court granted the motion

and dismissed the indictments.  The Commonwealth appeals that ruling pursuant to Code

§ 19.2-398(A)(1), arguing that constitutional speedy trial principles do not support the dismissal.

After a thorough review of the record, arguments, and relevant law, we conclude that the circuit

court erred in ruling that the defendant's constitutional right to a speedy trial was violated.

Consequently, we reverse the court's ruling dismissing the indictments and remand the case for

further proceedings consistent with this opinion.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND[1]

The defendant was arrested on a warrant on December 28, 2019, for the aggravated malicious wounding of Michael Escobar and related use of a firearm that occurred on March 29, 2019. He was denied bail. The primary charge was subsequently reduced to malicious wounding, and he waived a preliminary hearing.

On March 16, 2020, the day the grand jury was scheduled to act on the charges, the Supreme Court of Virginia issued its first judicial emergency order in response to the COVID-19 pandemic. That order restricted trials and non-emergency proceedings due to the pandemic, and the meeting of the grand jury was postponed. In the months that followed, the Supreme Court issued additional emergency orders that suspended jury trials entirely for a period of about eight weeks. The Court then directed that jury trials could be resumed by each judicial circuit that presented and received approval for a written plan detailing how the circuit would conduct such trials safely in light of the pandemic.

In May 2020, around the time that jury trials were suspended, the defendant, through court-appointed counsel, stated his intent to enter a guilty plea. However, on June 25, 2020, when the defendant appeared in court for entry of the plea, he demanded a jury trial and requested new counsel. The court appointed new counsel and scheduled a jury trial for September 15, 2020.

By mid-September, jury trials had not resumed in Chesterfield County. Additionally, the defendant's second attorney withdrew as counsel due to a conflict, and the court appointed a third attorney for the defendant. Chesterfield obtained approval to resume trials in early November, and the defendant's jury trial was scheduled for January 5, 2021.

_____

[1] In an appeal brought by the Commonwealth pursuant to Code § 19.2-398, we view the record in the light most favorable to the defendant as the prevailing party below. Commonwealth v. Grimstead, 12 Va. App. 1066, 1067 (1991).

As of January 4, 2021, however, the jail pod that housed the defendant was under quarantine, and pursuant to the judicial emergency orders of the Supreme Court, the defendant could not be transported or allowed to enter the courthouse. Consequently, his jury trial was reset for February 26, 2021. In mid-January, he was released on bail, and on February 22, he filed a motion to dismiss on constitutional speedy trial grounds.[2] On February 25, 2021, the circuit court granted the motion to dismiss, and it later denied the Commonwealth's motion to reconsider, issuing written opinions on both occasions. The Commonwealth noted this appeal.

II.  ANALYSIS

The Commonwealth contends that the circuit court's constitutional speedy trial analysis was erroneous in several respects. It suggests that the court inappropriately weighed several factors under the balancing test in Barker v. Wingo, 407 U.S. 514 (1972), and improperly dismissed the indictments.

Constitutional issues present questions of law that this Court reviews *de novo* on appeal. Wallace v. Commonwealth, 65 Va. App. 80, 88 (2015), aff'd mem., 292 Va. 1 (2016). To the extent that such review requires the Court to consider underlying factual findings, those findings may not be disturbed unless "plainly wrong" or "without evidence to support them." Wilkins v. Commonwealth, 292 Va. 2, 7 (2016).

We are guided in our analysis by bedrock principles of law. Both the United States and Virginia Constitutions provide criminal defendants with the right to a speedy trial. See U.S. Const. amend. VI; Va. Const. art. 1, § 8. Virginia's constitutional speedy trial right is co-extensive with the federal right. See Holliday v. Commonwealth, 3 Va. App. 612, 615-16

---

[2] The defendant also requested dismissal on statutory speedy trial grounds. The circuit court denied that part of the motion, and it is not before us in this appeal.

(1987) (citing <u>Fowlkes v. Commonwealth</u>, 218 Va. 763, 764 n.2 (1978)).  Therefore, such claims may be analyzed "without distinction."  <u>Id.</u>

The right to a speedy trial "is as fundamental as any of the rights secured by the Sixth Amendment" of the U.S. Constitution.  <u>Beachem v. Commonwealth</u>, 10 Va. App. 124, 130 (1990) (quoting <u>Klopfer v. North Carolina</u>, 386 U.S. 213, 223 (1967)).  Nonetheless, it is "necessarily relative" and "does not preclude the rights of public justice."  <u>Id.</u> (quoting <u>Beavers v. Haubert</u>, 198 U.S. 77, 87 (1905)).  Accordingly, a "balance must be maintained to properly protect the interests of all parties involved."  <u>Id.</u>  This analysis is sometimes "consistent with delays."  <u>Barker</u>, 407 U.S. at 522 (quoting <u>Beavers</u>, 198 U.S. at 87).  A key difference between the right to a speedy trial and other constitutional rights afforded an accused is that a supposed "deprivation" of the speedy trial right "does not per se prejudice the accused's ability to defend himself" and "may [actually] work to [his] advantage."  <u>Id.</u> at 521.  As the Court noted in <u>Barker</u>, "[d]elay is not an uncommon defense tactic."  <u>Id.</u>  It is through this lens that constitutional speedy trial challenges must be viewed.

The applicable test for determining whether a speedy trial violation has occurred requires balancing four main factors—the "length of delay, reason for delay, defendant's assertion of his right, and prejudice to the defendant."  <u>Howard v. Commonwealth</u>, 281 Va. 455, 462 (2011) (citing <u>Barker</u>, 407 U.S. at 530).  None of the factors "is either a necessary or sufficient predicate to the finding of a constitutional violation."  <u>Kelley v. Commonwealth</u>, 17 Va. App. 540, 544 (1994).  Instead, "they are related factors that 'must be considered together with . . . other [relevant] circumstances.'"  <u>Id.</u> (quoting <u>Barker</u>, 407 U.S. at 533).  These circumstances include the "conduct of both the prosecution and the defendant."  <u>Wallace</u>, 65 Va. App. at 97 (quoting <u>Jones v. Commonwealth</u>, 13 Va. App. 566, 572 (1992)).  The Court reviews the challenge with these parameters in mind.

A. Specific Speedy Trial Factors

1. Length of Delay

The "triggering mechanism" for constitutional speedy trial analysis is the length of the delay. Barker, 407 U.S. at 530. Absent "sufficient delay to be 'presumptively prejudicial, there is no necessity for inquiry into the other factors.'" Kelley, 17 Va. App. at 544 (quoting Barker, 407 U.S. at 530). The delay is calculated from the time of the defendant's arrest. See Fowlkes, 218 Va. at 766. It is well established that delay "approach[ing] one year" is "presumptively prejudicial" and requires further inquiry. See Doggett v. United States, 505 U.S. 647, 652 n.1 (1992).

In the instant case, the defendant was arrested on December 28, 2019, and remained in custody until January 27, 2021, shortly after the circuit court granted his request for bail. The circuit court found that the delay from arrest to the filing of the defendant's motion to dismiss on February 22, 2021, was almost fourteen months. Based on this record, the circuit court correctly concluded that the delay was presumptively prejudicial under Barker, which triggers review of the remaining factors.

2. Reasons for Delay

Once it is established that a delay was "'presumptively prejudicial,' the burden '[shifts to] the Commonwealth to show'" two things. Beachem, 10 Va. App. at 131-32 (quoting Fowlkes, 218 Va. at 767), quoted with approval in Wallace, 65 Va. App. at 98. First, the prosecution must show "what delay was attributable to the defendant and not to be counted against the Commonwealth." Fowlkes, 218 Va. at 767. Second, it must show what part of any delay not attributable to the defendant was "justifiable." See id.

a.  Apportionment of Delay Between the Defense and Prosecution

The circuit court held that the Supreme Court's emergency orders had the practical effect of prohibiting the defendant from exercising his right to a jury trial from May 18, 2020 (the date of issuance of the indictments), to November 2, 2020 (the date jury trials were resumed), a period of approximately five and one-half months.  The court did not evaluate the broader period between the defendant's arrest on December 28, 2019, and the dismissal of the charges on February 25, 2021.  This Court will conduct a more comprehensive review as required by Barker.

A consideration in our analysis is the recognition of the United States Supreme Court in Vermont v. Brillon, 556 U.S. 81 (2009), that a defendant's attorney "is the [defendant's] agent when acting, or failing to act, in furtherance of . . . litigation."  556 U.S. at 90 (first alteration in original) (quoting Coleman v. Thompson, 501 U.S. 722, 753 (1991)).  Except under unusual circumstances, delay caused by defense counsel is "charged against the defendant" even if counsel is court-appointed.  Id. at 90-92, 94 (noting that delay caused by unusual circumstances resulting in a "systemic" breakdown in the public defender system could be chargeable to the prosecution).  Additionally, delay attributable to a defendant includes a continuance necessitated by a change in defense counsel, regardless of whether the defendant was personally responsible for the change.  See id. at 91-93 (holding that delays caused by the failure of several of the defendant's assigned attorneys "to move his case forward," whether due to "inability or unwillingness," counted against the defendant because a contrary approach would create improper incentives for the defense (quoting State v. Brillon, 955 A.2d 1108, 1121 (Vt. 2008)));  cf. Sheard v. Commonwealth, 12 Va. App. 227, 231 (1991) (recognizing that delay caused by the need to obtain a special prosecutor due to a conflict of interest, to the extent that it was not

- 6 -

attributable to "slowness" or "negligence," did not count against the Commonwealth for constitutional speedy trial purposes).

Here, the period from the defendant's arrest on December 28, 2019, to the date on which the circuit court granted his motion to dismiss on speedy trial grounds, February 25, 2021, was 425 days. The defendant expressly concedes that the delay of 82 days from June 25, 2020 (the date scheduled for his guilty plea), to September 15, 2020 (the date scheduled for trial after he requested new counsel and a jury), was attributable to him.[3] See Logan v. Commonwealth, 47 Va. App. 168, 172 (2005) (*en banc*) (requiring independent review by the Court of proposed legal concessions). He also implicitly concedes that the delay from September 25 to October 9, 2020, which occurred when his second attorney withdrew due to a conflict, a period of 14 days, was attributable to him for speedy trial purposes.[4]

The reasoning of the United States Supreme Court in Brillon makes clear that the delays due to the defendant's change in plea and changes in counsel count against him for speedy trial purposes. Accordingly, we attribute these two periods of time to the defendant and turn to an examination of the remaining periods.

---

[3] Supporting this concession is language in the order entered on May 11, 2020, endorsed by both counsel, which set the matter for a guilty plea on June 25, 2020. See Barker, 407 U.S. at 529. That order provides that if the defendant did not enter a guilty plea on that date, "any *continuance* w[ould] count against the defendant for the purpose of speedy trial." (Emphasis added). We agree with the defendant on this point and do not consider the Commonwealth's broader claim that this language amounted to a blanket waiver of the defendant's constitutional speedy trial rights for the entire subsequent period of delay.

[4] While the defendant asserts that he did not request the two-week delay, he does not suggest, as he did with other periods of delay, that the time is attributable to the Commonwealth. As noted in the text, controlling case law indicates that this period of time is attributable to the defendant for constitutional speedy trial purposes regardless of his position on the issue.

<u>December 28, 2019, to June 25, 2020</u>

The time from December 28, 2019, to March 16, 2020, from arrest to scheduled grand jury consideration, is attributable to the Commonwealth in the ordinary course of administration of justice. The defendant's preliminary hearing was scheduled during that period of time, although he ultimately waived it, and matters proceeded through the justice system as usual during that 79-day period.

On March 16, 2020, the Supreme Court of Virginia issued the first in its series of judicial emergency orders. Because of the emergency orders, the meeting of the grand jury was delayed, and the indictments charging the defendant were not issued until May 18, 2020. Thus, that delay of 63 days resulted from the pandemic.

The 38 days that elapsed from the defendant's indictment on May 18 to June 25, 2020, the day scheduled for his guilty plea, are attributable to the Commonwealth in the ordinary course.

In sum, between the defendant's arrest and June 25, 2020, 117 days are attributable to the Commonwealth in the ordinary course, and 63 days are attributable to the pandemic.

<u>September 15 to September 25, 2020</u>

The defendant was scheduled to be tried on September 15, 2020, after the delay he concedes was attributable to his request to change counsel and have a jury trial. Trial was continued from that date because the Chesterfield Circuit Court had not yet received permission from the Supreme Court to resume jury trials. Consequently, the 10-day period of delay from September 15 to 25, 2020, is attributable to the pandemic.

<u>October 9, 2020, to February 25, 2021</u>

The final relevant period of time began on October 9, 2020. Shortly before this period started, the circuit received permission to resume jury trials on November 2, 2020. Therefore, the period from October 9 to November 2, 2020, totaling 24 days, is attributable to the pandemic.

The time from November 2, 2020, when jury trials resumed, to the date set for trial, January 5, 2021, a period of 64 days, is attributable to the Commonwealth in the ordinary course.

The time from the defendant's scheduled trial date of January 5, 2021, to his new scheduled date of February 26, 2021, a period of 51 days, is attributable to the pandemic. The record reflects that the defendant had been "placed in a quarantine pod" at the jail and, as a result, was not "available for [c]ourt" on January 5. The defendant's status prevented him both from being transported and from being admitted to the courthouse because staff, pursuant to the judicial emergency orders, were prohibited from admitting anyone quarantined in the preceding 14 days.

Accordingly, between October 9, 2020, and February 25, 2021, 64 days are attributable to the Commonwealth in the ordinary course, and 75 days are attributable to the pandemic.

<u>Summary of Apportioned Time</u>

As the defendant correctly concedes, of the almost fourteen months (425 days) between his arrest and the dismissal of the charges, a period of a little over three months (96 days) is attributable to him due to his decision to request a jury trial rather than plead guilty. Of the remaining time (329 days), just under five months (148 days) are attributable to the pandemic, and about six months (181 days) are attributable to the Commonwealth in the ordinary course. In other words, the Commonwealth is directly responsible for about six out of fourteen months.

### b. Justification for Delay Attributed to the Prosecution

Next, the Court must consider what part of the delay attributable to the prosecution was justifiable. Beachem, 10 Va. App. at 131-32; see Fowlkes, 218 Va. at 767. Although any delay not attributable to the defendant is the responsibility of the Commonwealth for speedy trial purposes, "different weights should be assigned to different reasons" for delay. Barker, 407 U.S. at 531. Barker recognizes three categories of reasons—deliberately improper, merely negligent, and valid and unavoidable. See id. Deliberate delay, such as that caused with an intent to "hamper the defense" or harass the defendant, "should be weighted heavily against the [Commonwealth]." Id.; see United States v. Grimmond, 137 F.3d 823, 828 (4th Cir. 1998). Negligence, understaffing of a prosecutor's office, or "overcrowd[ing of the] courts" receives "less" weight "but nevertheless [is] considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." Barker, 407 U.S. at 531; see Strunk v. United States, 412 U.S. 434, 436 (1973). Finally, "a valid reason," such as the fact that a witness is "missing" due to factors outside the government's control, "justif[ies] appropriate delay." Barker, 407 U.S. at 516-18, 531, 534.

Here, the circuit court concluded that "the reason for the delay"—the pandemic-related suspension of jury trials—was a factor that weighed "*significantly*" in favor of the defendant. (Emphasis added). We hold that the court erred by not considering the varying weights to be assigned to this factor based upon the degree of fault of the Commonwealth in the delay.

Clearly, the Virginia Supreme Court entered the judicial emergency orders that halted all jury trials for a period of time and prevented the defendant's trial from proceeding on both September 15, 2020, and January 5, 2021. However, this does not end the analysis. The Supreme Court expressly entered those orders in response to the pandemic, an international health crisis for which the judiciary was not responsible and over which it had little control.

- 10 -

While it is true that "even in a pandemic, the Constitution cannot be put away and forgotten," the United States Supreme Court has recognized that "[s]temming the spread of COVID-19 is unquestionably a compelling [governmental] interest." Roman Catholic Diocese v. Cuomo, 141 S. Ct. 63, 67-68 (2020) (*per curiam*) (granting an injunction to prevent limits on the number of people permitted to attend religious services during the pandemic); see id. at 73 (Kavanaugh, J., concurring) (recognizing the pandemic as "extraordinarily serious and deadly"); see also United States v. Olsen, 995 F.3d 683, 695 (9th Cir. 2021) (*per curiam*) (holding that a federal district court did not violate the Sixth Amendment when it ordered the suspension of jury trials due to "unprecedented public health and safety concerns" posed by COVID-19, in part because the orders balanced speedy trial rights against health risks to "jurors, defendants, attorneys, and court personnel").

Consequently, the existing Barker framework and persuasive case authority support our conclusion that the pandemic was "a valid reason" that "justif[ied] appropriate delay" under the third category of reasons for delay. See Barker, 407 U.S. at 531. The situation did not involve either intentional harm or negligence toward the defendant. Barker places in this "justifiable" or "no fault" category a delay caused by a witness who was missing due to factors outside the government's control. Id.; see also id. at 533-34 (observing that a seven-month delay resulting from the illness of the former sheriff leading the investigation also provided "a strong excuse" for delay). Other courts have reasonably and logically held that this same rationale applies to delay caused by the pandemic. See, e.g. United States v. Smith, 494 F. Supp. 3d 772, 783 (E.D. Cal. 2020), mandamus denial aff'd on other grounds, No. 20-73723, 2021 WL 1595443, at *2-3 & n.3 (9th Cir. Apr. 23, 2021) (noting that the defendant's appeal rested solely on the federal speedy trial act but stating in *dicta* that the lower court correctly found no Sixth Amendment violation); United States v. Pair, No. 20cr3, 2021 WL 772235, at *5-6 (E.D. Va. Feb. 26, 2021)

- 11 -

(rejecting the defendant's assertion that the government was partially responsible for the delay because it "failed to adequately control [the] pandemic in its early stages"), appeal docketed, No. 21-4269 (4th Cir. June 1, 2021); cf. United States v. Richman, 600 F.2d 286, 293-94 (1st Cir. 1979) (concluding that trial delay caused in part by a "devastating snowstorm" was not chargeable to the government in a constitutional speedy trial analysis).[5]

In this case, the pandemic made it unsafe for all witnesses and other trial participants to come to court for a period of time, rendering them, like in Barker, justifiably "missing" to safeguard their health. See 407 U.S. at 531. The ongoing nature of the global pandemic supported the continuation of restrictions until such time as circumstances permitted the resumption of jury trials in a manner that protected both the health and safety of all participants and the constitutional rights of criminal defendants. The Supreme Court's judicial emergency orders suspended jury trials for a period of about eight weeks in the earlier stages of the

---

[5] Other jurisdictions have reached similar results in constitutional speedy trial cases. See also, e.g., United States v. Morgan, 493 F. Supp. 3d 171, 190, 219 (W.D.N.Y. 2020) (holding that a four-month delay when the "pandemic upended all aspects of life" was "plainly 'valid'" due to "health and safety risks"); United States v. Crittenden, No. 20-CR-7, 2020 WL 5223303, at *3 (M.D. Ga. Sept. 1, 2020) (holding that "a global pandemic . . . beyond the control of all the parties . . . justifie[d] an appropriate delay"); United States v. Snyder, No. 16-cr-160, 2021 WL 369674, at *7 (N.D. Ind. Feb. 3, 2021) (holding that delay from the "global pandemic and the resulting inability to conduct a trial" in a way that was "safe for jurors, litigants, and court staff" could not "rationally" be "viewed as anything other than completely justifiable"); United States v. Soto, No. 18-CR-50050-01, 2021 WL 1176068, at *7 (D.S.D. Mar. 29, 2021) (holding that a pandemic delay of ten months, including time in which at least one person in the defendant's cell block was "visibly sick," was "justified"); State v. Rodriguez, No. Cr. 1811005093, 2021 WL 1221461, at *5 (Del. Super. Ct. Mar. 30, 2021) (ruling that the "'inability to hold trials [without] put[ting] the public, the parties, court staff, and counsel at serious risk'" due to COVID-19 was a "reasonable justification for delay" and did not "weigh against the State" (quoting Smith, 494 F. Supp. 3d at 781)). But see State v. Labrecque, 249 A.3d 671, 674, 681 (Vt. 2020) (holding in response to a due process claim that pandemic delay fell into the negligence category for which the government bore some responsibility); see also Ex parte Sheffield, 611 S.W.3d 630, 633, 635-37 (Tex. App. 2020) (holding after a thirteen-month delay due in part to the pandemic that, although "[c]ircumstances related to" the pandemic "m[ight] reasonably affect the date of trial," the state lacked authority to deprive defendants of the right to a speedy trial "indefinitely" and remanding for trial because the applicable judicial emergency order permitted some jury trials).

pandemic but then directed each circuit to develop a plan for resuming jury trials safely. Chesterfield County submitted such a plan, obtained approval, and resumed jury trials less than six months after the full suspension was imposed. The circuit court did not find that either the circuit (in applying for approval to resume jury trials) or the Supreme Court (in imposing the initial suspension and handling the resumption request) was negligent in any way, and we see nothing in the record that would support such a finding. To the contrary, this approach clearly reflects a deliberate effort to balance public health with the administration of justice.

Accordingly, we hold that the circuit court erred by weighing the reason for the pandemic-related delay significantly in the defendant's favor. It should instead have classified the cause for the delay attributable to the pandemic as valid and unavoidable because it was outside the Commonwealth's control. See State v. Lewis, No. 28962, 2021 WL 2285309, at *12 (Ohio Ct. App. June 4, 2021) (holding that the state was "not responsible for the unusual circumstances surrounding the pandemic" and that no evidence indicated "[s]tate neglect"); United States v. Mayer, No. 19-cr-0096, 2021 WL 2686133, at *9 (D. Minn. June 30, 2021) (holding that neither party was responsible for the delays caused by the pandemic and that the delays "were not primarily attributable to . . . docket congestion").

### 3. Assertion of Right

The third factor in the balancing test involves whether the accused asserted his right to a speedy trial. Beachem, 10 Va. App. at 132. The United States Supreme Court has rejected "the rule that a defendant who fails to demand a speedy trial forever waives his right" and instead treats this as simply "one of the factors to be considered." Barker, 407 U.S. at 528. However, "fail[ing] to assert the right . . . make[s] it difficult for a defendant to prove that he was denied a speedy trial." Id. at 532. Additionally, delay in asserting the right weighs against finding a violation. See Howard, 281 Va. at 462; Shavin v. Commonwealth, 17 Va. App. 256, 270 (1993);

- 13 -

see also Commonwealth v. Jerman, 263 Va. 88, 94 (2002) (holding that the "perceived futility" of objecting "does not excuse" a defendant from doing so because of the duty to create a record for appeal).

Here, the circuit court weighed this factor in the defendant's favor, characterizing the record as showing that "at least" from June 25, 2020, the defendant asserted "his constitutional right." It based this decision on its general findings that the defendant "repeatedly asserted his rights as an accused" and "actively participated in his defense" by requesting bond, seeking discovery, and considering a guilty plea. Further, the court found that the fact that the defendant requested a jury trial on four occasions between June 25, 2020, and January 5, 2021, was "[m]ost important[]." Finally, the court noted that the defendant "vehemently objected" to continuing his trial on January 5, 2021.

Notably, not once in the relevant portion of the court's ruling did it state that the right that the defendant asserted was his right to a *speedy* trial. The fact that it characterized as most important was that the defendant made repeated requests for a *jury* trial. However, the rights to a speedy trial and a jury trial are distinct rights. See U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . ."); see also Va. Const. art. 1, § 8 ("[I]n criminal prosecutions[,] a man . . . shall enjoy the right to a speedy and public trial, by an impartial jury . . . ."). They are contained in separate clauses of the Sixth Amendment. See Doggett, 505 U.S. at 651 (recognizing the Speedy Trial Clause); United States v. Basham, 561 F.3d 302, 319 (4th Cir. 2009) (recognizing the Impartial Jury Clause). As a matter of law, requesting a jury trial is qualitatively different from asserting one's right to a speedy trial. See Barker, 407 U.S. at 519, 522; see also Brown v. Epps, 91 Va. 726, 737-38 (1895) (emphasizing that "several [different] rights [are] enumerated" in Article 1, Section 10, of the Virginia Constitution and that each one "stand[s] upon an equal footing").

- 14 -

In light of this record, the finding that the defendant asserted his constitutional right to a speedy trial starting on June 25, 2020, is plainly wrong. The record reflects that neither the defendant nor any of his attorneys mentioned his speedy trial rights until a bond hearing on January 22, 2021, when almost thirteen months had elapsed following his arrest. Further, at that time, the defendant did not specify whether he was referring to his statutory or constitutional rights. Not until February 22, 2021, did the defendant specifically articulate a constitutional speedy trial claim and request dismissal of the charges. This occurred at a time when jury trials had been underway again for a period of several months, and the only reason the defendant's trial had not proceeded as scheduled on January 5, 2021, was because the defendant himself was being housed in "a quarantine pod" at the jail on that date.

On these facts, the assertion-of-right factor weighs only slightly in the defendant's favor because he did not mention his speedy trial right until 35 days before trial, in the context of a bond motion, and did not assert the constitutional form of the right as a basis for dismissal of the charges until four days before his third scheduled trial date. See Howard, 281 Va. at 462; Shavin, 17 Va. App. at 270; see also Lewis, No. 28962, 2021 WL 2285309, at *12 (holding that the defendant's assertion of his speedy trial right did not weigh "heavily, because he waited almost until the final trial date" to raise it).

### 4. Prejudice

The fourth and final Barker factor involves an assessment of prejudice to the defendant. The constitutional speedy trial right protects three related interests: "(1) preventing oppressive pretrial incarceration; (2) minimizing the accused's anxiety; and (3) limiting the possibility that the defense will be impaired." Kelley, 17 Va. App. at 546. Additionally, prejudice is assessed under a "three-tiered test requiring varying levels of prejudice depending on [factor two of Barker,] the degree of culpability of the government." Shavin, 17 Va. App. at 268. For example,

if the Commonwealth "intentionally held back in its prosecution of him to gain some impermissible advantage at trial[,] . . . that official bad faith in causing delay will be weighed heavily against the government" even if "the accused cannot demonstrate exactly how it has prejudiced him." Doggett, 505 U.S. at 656-57. Conversely, if the Commonwealth bears no fault in the delay and proceeds "with reasonable diligence," as we have held that it did here, then "his speedy trial claim w[ill] fail . . . as a matter of course however great the delay, so long as [the defendant cannot] show specific prejudice to his defense."[6] Id. at 656; see Shavin, 17 Va. App. at 269.

In the instant case, the circuit court weighed the prejudice factor as a whole in the defendant's favor. In doing so, it viewed the first interest, the need to prevent oppressive pretrial incarceration, as "the most serious of the[] three interests" in the case. The court assigned "lesser weight" to the second and third interests, including the possibility of specific prejudice to the defendant's case from the death of a "potential witness." However, because the Commonwealth was *not at fault* in causing the portion of the delay not attributable to the defendant, the only interest of relevance here is the third one, specific prejudice, to which the circuit court assigned "lesser" weight.

Accordingly, whether specific prejudice has been proved is dispositive of the constitutional speedy trial challenge. Because the circuit court gave some weight to this factor without making any express findings of fact, we examine whether the record, viewed in the light most favorable to the defendant, supports a conclusion that the defendant established specific prejudice.

---

[6] A delay caused by governmental negligence "occupies the middle ground." Doggett, 505 U.S. at 656-57.

Barker provides that "[i]f witnesses die or disappear during a delay," or are unable to recall "distant" events accurately, the prejudice is "obvious." 407 U.S. at 532. Nonetheless, in Barker, which involved memory loss rather than death, the Court held that the record showed "only two very minor lapses of memory" that were not "significant to the outcome" and did not prove prejudice. Id. at 534. Therefore, in addressing this prong, a court "cannot speculate" that prejudice has occurred, and the defendant must establish "at least . . . a *factual basis* for believing" that the loss of the witness' testimony "may have adversely affected the defense." Kelley, 17 Va. App. at 547 (emphasis added).

Here, the circuit court found that the death of the potential witness was "relevant" and noted the parties' related arguments. Those arguments included the defendant's claim that his defense was "significantly impaired" by the death of the "'key potential witness'" and that Barker directs that "prejudice is obvious" if a witness "die[s] or disappear[s] during a delay." See Barker, 407 U.S. at 532. The circuit court stated that although it was "not prepared to accept" the key witness language in Barker as "an absolute resolution" of the matter in the defendant's favor, it treated the potential witness' death as "relevant."

The defendant made a proffer regarding *how* he believed the alleged potential witness, Nicholas Yarborough, might have helped his case. We hold that this proffer amounts to no more than speculation and is insufficient to establish specific prejudice. See Kelley, 17 Va. App. at 548. In the circuit court, the defendant asserted that Yarborough had important information because the prosecution's discovery responses, filed July 27, 2020, indicated that he was identified by two witnesses as knowing the location of the firearm used to commit the malicious wounding. The defendant stated that witnesses Porchia Murphy and Anthony Miles discussed Yarborough's possession of the firearm in a recorded jail call. The defendant further asserted that the firearm was crucial evidence and that due to Yarborough's death, he was deprived of

- 17 -

both the witness' testimony and any ability to locate the firearm. The defendant suggested that if he obtained the firearm, he "could get prints and other [unspecified exonerating] evidence" from it.

The record reflects, however, that the defense had ample opportunity to make use of the information about Yarborough. The defendant received the discovery responses more than three months before Yarborough's death in November 2020. The record contains no indication that the defendant subpoenaed him for either the defendant's September 15, 2020 trial or his January 5, 2021 trial.[7] This was so even though the first trial date was almost two months before Yarborough died and the second trial date was scheduled more than a month prior to his death. Defense counsel also did not provide any specific information regarding attempts to locate him to inquire about the gun.[8] See Beachem, 10 Va. App. at 134. These facts tend to indicate that the defendant and his attorneys either did not believe Yarborough was a material witness or did not know how to find him. If they could not find him prior to his death to question him or subpoena him for either trial, it was this inability to locate him that caused any potential prejudice, not the delay in the defendant's trial.

Further, the defendant did not allege that Yarborough was a witness to any relevant events, only that he knew where the gun was located. The defendant was not charged and

---

[7] The prosecutor stated in the circuit court that "a view of the Clerk['s] file" provided "no indication that [Yarborough] ha[d] ever been under subpoena for any trial date." The defendant's third attorney in the circuit court, who is also his counsel in this appeal, did not challenge that assertion, and the circuit court accepted it.

[8] In seeking dismissal on speedy trial grounds in February 2021, defense counsel represented only that Yarborough "was extremely difficult to locate." We note the Commonwealth's argument that the doctrine of approbation and reprobation should bar the defendant's claim of prejudice because he had insisted in early January that he was ready to go to trial, not that he was still attempting to locate crucial evidence. See generally Bass v. Commonwealth, 70 Va. App. 522, 537 n.7 (2019) (applying the doctrine in a statutory speedy trial case). We do not address this argument in light of our conclusion on the merits of the question concerning specific prejudice.

- 18 -

arrested for the offense until almost nine months after it was committed, and he received the discovery responses that he claimed triggered the desire to locate Yarborough after the passage of even more time. He did not articulate how fingerprint or DNA evidence obtained after that length of time, during which the gun had been in the possession of Yarborough and perhaps others, was likely to exonerate him. Neither the absence of evidence linking the defendant to the gun after that period of time nor the possible presence of evidence connecting his co-defendant to it was likely to have much if any value to the defense.[9]

Based on this record, we conclude that the defendant's claim that he suffered specific prejudice due to the delay in his trial was speculative at best. See Beachem, 10 Va. App. at 134 (declining to find a constitutional speedy trial violation when the claim of prejudice was "sheer speculation"); see also Flowers v. Fair, 680 F.2d 261, 262 (1st Cir. 1982) (*per curiam*) (rejecting a claim of prejudice based on "a belated, uncorroborated assertion that an alibi witness was lost" due to the delay). As a result, we hold that the defendant did not establish the required specific prejudice and that the circuit court erred by weighing the prejudice prong heavily in the defendant's favor.

---

[9] Nothing else in the record suggests that Yarborough would have provided more than a speculative basis supporting a defense. See Godfrey v. Commonwealth, 227 Va. 460, 464 (1984) (noting that the Court can "review . . . the record" when "assessing responsibility for delay in trying a defendant"), quoted in Wallace, 65 Va. App. at 91. The Commonwealth represented that the "defendant's own sister," Porchia Murphy, who had not been charged with a related crime, would testify that the defendant was in the car from which the shots were fired. The defendant relied on a jailhouse phone call between Porchia and co-defendant Miles that was provided in discovery. The discovery also included summaries of statements from Porchia, Miles, and the victim. Those statements, which were filed in the circuit court, indicate that the defendant and Miles worked together to commit the charged malicious wounding. See Reid v. Commonwealth, 57 Va. App. 42, 49 (2010) (recognizing that the Court may consider parts of the record not included in the appendix (citing Rule 5A:25(h))). According to the victim, Miles was the driver of the vehicle and the person who "initiated the [attempted] robbery" by telling him to "hand over [his] stuff." Also, the victim did not equivocate in his identification of the defendant as the person who shot him, and the victim could not easily have confused the two men because he described the defendant as five inches taller than co-defendant Miles. Finally, the discovery responses indicated that both Porchia and Miles also identified the defendant as the shooter.

## B. Overall Assessment of Factors

In balancing all of the Barker factors, although the overall length of the delay was presumptively prejudicial, the reason for much of it was attributable to the defendant (who opted to request a jury trial rather than enter a guilty plea as planned) and the pandemic. As a result, the delay did not violate the defendant's right to a speedy trial.

As noted, the portion of the delay caused by the pandemic was an appropriate, justifiable delay and does not count against the Commonwealth. Additionally, the defendant did not assert his constitutional right to a speedy trial until more than a year after his arrest, so this factor weighs only slightly in his favor. Further, because the Commonwealth was not at fault in any way in causing the delay due to the pandemic, the time attributable to the Commonwealth is only 181 days or approximately six months. That six-month period arose in the normal course of the administration of justice. Finally, because the delay beyond that six months was due to the pandemic, the defendant may establish a constitutional speedy trial violation only if he proves specific prejudice. His assertion of such prejudice fails because his allegations regarding how the testimony of the deceased witness, or any evidence the defendant might have obtained from the firearm believed to be in that potential witness' possession, would have aided him in his defense were speculative at best. See Shavin, 17 Va. App. at 270 (holding that the deciding factors were the defendant's delay in asserting his speedy trial right and the fact that he was tried within six months of asserting it, a period substantially shorter than the one-year period after which prejudice is presumed).

## III. CONCLUSION

For these reasons, we hold that the circuit court erred by ruling that the defendant's constitutional speedy trial rights were violated and by dismissing the indictments against him as a

result. Consequently, we reverse the ruling of the circuit court, reinstate the indictments, and

remand to that court for further proceedings consistent with this opinion.

<u>Reversed and remanded.</u>