COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Malveaux and Causey
Argued at Salem, Virginia

SHONDA DANNIELL LYNN REEDY, S/K/A
  SHONDA DANIELL LYNN REEDY

v.      Record No. 0182-22-3

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE MARY BENNETT MALVEAUX
MARCH 21, 2023

FROM THE CIRCUIT COURT OF THE CITY OF BRISTOL
Sage B. Johnson, Judge

Ilya I. Berenshteyn (The Senter Law Firm, PC, on briefs), for
appellant.

John Beamer, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

Shonda Danniell Lynn Reedy ("appellant") entered a conditional nolo contendere plea to

one count of perjury, in violation of Code § 18.2-434. On appeal, she argues that the trial court

erred in denying her motion to dismiss because the delay between the issuance of the indictment and

her arrest violated the Sixth Amendment of the United States Constitution and Article I, Section 8

of the Virginia Constitution. For the following reasons, we affirm the trial court's ruling.

I.  BACKGROUND

On February 13, 2020, appellant provided false information regarding her social security

number and whether she had been convicted previously of any crimes on an application for a

concealed handgun permit. She had a prior misdemeanor conviction for shoplifting in July 2016.

A grand jury returned an indictment for perjury on August 3, 2020, and a capias was issued for

appellant's arrest on the same day. The City of Bristol Sheriff's Office received the capias on

August 4, 2020, but did not execute it until September 1, 2021. Appellant turned herself in on

that date and was released on an unsecured bond of $1,000. Her trial was set for November 29, 2021.

Appellant moved to dismiss the case on constitutional speedy trial grounds on November 3, 2021.

The trial court held a hearing on the motion on November 16, 2021. Appellant testified that a friend, who worked at the jail, had notified her of the outstanding capias on August 31, 2021. Appellant stated that she turned herself in the day after receiving that information. She further testified that in the 13-month period after the indictment was issued but preceding her arrest, police had been to her house "[a]t least four times" on matters involving her children and stepchildren. During these visits, police had not informed her that there was an outstanding capias for her arrest. She also testified that "[t]o the best of [her] memory" she thought she had been stopped twice by police while driving during this time period. She did not remember the "exact dates" of the traffic stops but stated that she was stopped once for a speeding violation and once for a possible window tint violation. Police checked her license information but did not arrest her on the capias at those times. During cross-examination, the Commonwealth's Attorney asked appellant for the exact dates of the traffic stops, and appellant replied, "Again, I do not have exact dates. Unfortunately, I don't keep up with dates." She also could not recall the names of the officers who stopped her.

Appellant also testified that she was arraigned and appointed an attorney in mid-September 2021. Counsel for appellant proffered that he first met with appellant near the end of October 2021 and that the delay in meeting with her was "not because of her" but due to his work preparing for other trials.

During argument, counsel for appellant asserted

> [t]he whole case is basically based on the box my client checked or
> didn't check. And the Commonwealth expects us to defend on

whether she made an action knowingly and willfully and whether such statement is material nineteen months later?  She just sat right here and told you, Your Honor, "I have trouble with my memory especially with dates and things like that."

There's no way to know which clerk the application for concealed carry was presented to, and whether this mark was made before it was submitted or it was something the clerk found and asked my client, and she had to make that decision very quickly by trying to calculate back.

The mark in question asked if she was convicted of a misdemeanor within five years.  So, she had to calculate very quickly back with, "I don't know, Your Honor."  We don't know who the clerks are.  We don't know who she presented it to.  We have no idea who it was.

So, I don't know who the witnesses are.  I can't interview any of those witnesses to tell the [c]ourt whether we have a legitimate defense at this time or not.

Counsel also contended that if appellant had been arrested in August or September 2020, "a different plea could have been negotiated because of proximity to the events."

During argument, the Commonwealth offered no specific explanation for the delay in serving the capias on appellant.  The Commonwealth's Attorney noted that the COVID-19 pandemic "had affected everything[,] not only what goes on in this [c]ourt but also the way that the [p]olice [o]fficers were able to do their jobs."[1]  But he further stated, "frankly, I'm not sure what the reason for the delay was.  Apparently, there was no one during that period of time who was out looking for the defendant or trying to serve that indictment."

After hearing argument, the court denied appellant's motion to dismiss.  In its ruling, the court noted that "the caselaw tells me that I should consider that one-year mark, but it's not a bright line.  It's not anything over a year automatically gets kicked out."  The court found that "[t]he reason for the delay in getting her arrested, at least as it relates to those events, is nothing

---

[1] Counsel for appellant acknowledged at the hearing that due to the pandemic, jury trials had been suspended until February 2021, which was six months after appellant was indicted.  However, he asserted that during that same time period, the Commonwealth had not been prevented from "arresting people and conducting regular business."

more than oversight, at best, negligence, at worst, of an [o]fficer in not performing their duties by arresting [appellant] with the warrant" during the traffic stops. However, it found that "there's been no evidence of any prejudice shown to" appellant, noting that "[t]here was some general testimony about memory issue . . . , but that, in and of itself, is not sufficient for the [c]ourt to find a prejudicial [e]ffect on the trial."

Appellant entered a conditional nolo contendere plea on November 29, 2021. This appeal followed.

## II. ANALYSIS

Appellant argues that the trial court erred in denying her motion to dismiss because her constitutional right to a speedy trial was violated.[2]

"Constitutional issues present questions of law reviewed *de novo* on appeal." *Ali v. Commonwealth*, 75 Va. App. 16, 33 (2022). "To the extent such review involves underlying factual findings, those findings may not be disturbed unless 'plainly wrong' or 'without evidence to support them.'" *Id.* (quoting *Wilkins v. Commonwealth*, 292 Va. 2, 7 (2016)).

Unlike the statutory right to a speedy trial, "[t]he constitutional right to a speedy trial . . . is governed by a balancing test that is not tied inextricably to calendar dates." *Brown v. Commonwealth*, 75 Va. App. 388, 406-07 (2022). "The determination of whether an accused has been denied the constitutional right to a speedy trial requires 'a difficult and sensitive balancing process' in which the court examines on an *ad hoc* basis the conduct of both the state and the accused which led to a delay in prosecution." *Kelley v. Commonwealth*, 17 Va. App. 540, 544 (1994) (quoting *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). The test for determining whether a

---

[2] Both the United States and Virginia Constitutions provide criminal defendants with the right to a speedy trial. *See* U.S. Const. amend. VI; Va. Const. art. 1, § 8. Virginia's constitutional speedy trial right is coextensive with the federal right. *See Holliday v. Commonwealth*, 3 Va. App. 612, 615-16 (1987). Therefore, such claims may be analyzed "without distinction." *Id.* at 615.

speedy trial violation has occurred requires balancing four main factors—the "length of delay, reason for delay, defendant's assertion of his right, and prejudice to the defendant." *Howard v. Commonwealth*, 281 Va. 455, 462 (2011) (citing *Barker*, 407 U.S. at 530). An appellant must establish that those factors, when considered together, "weigh in his favor." *Ali*, 75 Va. App. at 35 (quoting *United States v. Thomas*, 55 F.3d 144, 148 (4th Cir. 1995)).

A.  Specific Speedy Trial Factors

1.  Length of Delay

The first factor we consider when evaluating a constitutional speedy trial issue is the length of delay. "The length of the delay is the 'triggering mechanism' for speedy trial analysis." *Kelley*, 17 Va. App. at 544 (quoting *Barker*, 407 U.S. at 530). "Unless there is sufficient delay to be 'presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.'" *Id.* (quoting *Barker*, 407 U.S. at 530).

In the instant case, appellant challenges the time from the filing of the indictment, August 3, 2020, until the date of her arrest, September 1, 2021, a period of approximately 13 months. *See Doggett v. United States*, 505 U.S. 647, 648-50, 652 (1992) (measuring the length of delay from indictment until arrest for speedy trial purposes); *see also United States v. Alexander*, 817 F.3d 1178, 1181 & n.1 (9th Cir. 2016) (applying a Sixth Amendment analysis to a claim challenging delay between indictment and arrest after noting that the length of delay in speedy trial claims is "ordinarily measured from the time of the indictment to the time of trial"). "It is well established that delay 'approach[ing] one year' is 'presumptively prejudicial' and requires further review." *Ali*, 75 Va. App. at 35 (alteration in original) (quoting *Doggett*, 505 U.S. at 652 n.1); *see also Miller v. Commonwealth*, 29 Va. App. 625, 633 (1999) (analyzing the last three speedy trial factors after finding that a delay of about 13 months between the filing of the detainer and the defendant's trial was presumptively prejudicial and required further review).

Here, because the time between appellant's indictment and arrest exceeded a year, the length of delay is presumptively prejudicial[3] and triggers consideration of the remaining factors.[4]

## 2. Reason for Delay

Turning to the second factor, the reason for delay, "[o]nce shown that there has been a delay that is 'presumptively prejudicial,' the burden 'devolves upon the Commonwealth to show, first, what delay was attributable to the defendant and not to be counted against the Commonwealth and, second, what part of any delay attributable to the prosecution was justifiable.'" *Beachem v. Commonwealth*, 10 Va. App. 124, 131-32 (1990) (quoting *Fowlkes v. Commonwealth*, 218 Va. 763, 767 (1978)).

As conceded by the Commonwealth on brief, all of the delay in this case must be attributed to it and not appellant.[5] After appellant was indicted, a capias was issued for her

---

[3] The Commonwealth argues that the delay was not presumptively prejudicial because appellant was tried within the statutory time period set out in Code § 19.2-243. *See Sheard v. Commonwealth*, 12 Va. App. 227, 231 (1991) ("A process which results in a trial on the merits within the statutorily described time does not support a presumption of prejudice."). However, *Sheard* is inapposite. In *Sheard*, the defendant raised a constitutional speedy trial challenge because seven months had passed between his arrest and trial. *Id.* at 229-30. He was not in jail before the trial, so the Commonwealth had nine months under Code § 19.2-243 to commence his trial. *Id.* Here, appellant has not asserted a speedy trial violation between her arrest on September 1, 2021, and her plea hearing on November 29, 2021, a period of less than three months. Rather, she challenges the time period beginning with her indictment. *See United States v. Marion*, 404 U.S. 307, 320 (1971) ("[E]ither a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge . . . engage the particular protections of the speedy trial provision of the Sixth Amendment.").

[4] While we find the length of delay presumptively prejudicial under this first factor, we do further note that "[w]hen the charge is for a misdemeanor or lesser offense, the length of delay that will be tolerated is less than that when the charge is for a more serious crime." *Kelley*, 17 Va. App. at 545. Appellant was charged with perjury, in violation of Code § 18.2-434, a felony offense. Thus, we tolerate the delay more so in this case than that of a less serious offense.

[5] We accept the Commonwealth's concession "as a waiver regarding this period of time without considering it on the merits." *Ali*, 75 Va. App. at 39; *see also Logan v. Commonwealth*, 47 Va. App. 168, 172 & n.4 (2005) (en banc) (explaining that an appellate court may accept a legal concession as a waiver). Additionally, as noted above, the record clearly supports the

arrest. Despite having several encounters with law enforcement during the 13-month period between arrest and indictment, appellant was not arrested until she turned herself in after a friend told her about the indictment.

"Although any delay not attributable to the defendant is the responsibility of the Commonwealth for speedy trial purposes, 'different weights should be assigned to different reasons' for delay." *Ali*, 75 Va. App. at 42 (quoting *Barker*, 407 U.S. at 531). There are "three categories of fault for delay attributable to the government—delay that is deliberately improper, merely negligent, and valid and unavoidable." *Id.* Deliberate delay "should be weighed heavily" against the Commonwealth. *Id.* "Negligence in scheduling, understaffing of a prosecutor's office, or 'overcrowd[ing of the] courts' receives 'less' weight 'but nevertheless [is] considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.'" *Id.* (alterations in original) (quoting *Barker*, 407 U.S. at 531). "Finally, a reason deemed 'valid' fully 'justif[ies] appropriate delay.'" *Id.* (alteration in original) (quoting *Barker*, 407 U.S. at 531).

Here, the trial court concluded that the delay in arresting appellant was "nothing more than oversight, at best, negligence, at worst." The record supports the trial court's conclusion that the Commonwealth's delay in arresting appellant was a result of negligence rather than deliberate delay. There is no indication from the record that the Commonwealth purposefully delayed appellant's arrest in order to obtain a benefit for trial. At the hearing on the motion to dismiss, the Commonwealth offered no specific explanation for the delay in serving the capias on appellant, only noting that "[a]pparently, there was no one during that period of time who was out looking for the defendant or trying to serve that indictment." However, "while simple

conclusion that the delay in this case can only be attributed to the Commonwealth's actions or, indeed, its failure to act.

- 7 -

negligence on the part of the Commonwealth may be a 'more neutral reason' than deliberate procrastination, administrative derelictions" do not totally excuse the Commonwealth's delay. *Fowlkes*, 218 Va. at 768 (quoting *Barker*, 407 U.S. at 531). Thus, this factor weighs against the Commonwealth, but it carries less weight than if the delay had been deliberately caused.[6] *See Sheard v. Commonwealth*, 12 Va. App. 227, 231 (1991) (holding that the delay in prosecuting the defendant "should not weigh heavily against the Commonwealth" because there was "no suggestion" the delay was willful, even though "some of the delay was attributable to slowness or even negligence on the part of the Commonwealth or its agencies").

3. <u>Assertion of Speedy Trial Right</u>

The third factor we consider is whether appellant asserted her right to a speedy trial. "Although the defendant's failure to raise a speedy trial claim does not constitute a waiver, the fact that the defendant asserted or failed to assert his right to a speedy trial is one factor to be considered." *Kelley*, 17 Va. App. at 546. "The fact that a defendant asserts his speedy trial right

---

[6] The Commonwealth also argues that this factor should weigh less heavily against it due to the COVID-19 pandemic. In its ruling, the trial court stated that it was "mindful of the fact of where we've been within the last year," that "the world, at least in Southwest Virginia, came to a screeching halt," and that "the [c]ourt system is not operating because of the global pandemic at full capacity."

This Court has recently held that a pandemic-related delay is "valid, unavoidable, and outside the Commonwealth's control." *Ali*, 75 Va. App. at 45. However, this case does not involve the Commonwealth's diligence in scheduling appellant's trial following arrest, which would implicate court-scheduling challenges due to the pandemic; rather, the issue is the delay between the issuance of an indictment and the arrest of appellant. During the hearing before the trial court, the Commonwealth's Attorney argued that the COVID-19 pandemic "had affected everything[,] not only what goes on in this [c]ourt but also the way that the [p]olice [o]fficers were able to do their jobs," but then further stated, "frankly, I'm not sure what the reason for the delay was. Apparently, there was no one during that period of time who was out looking for the defendant or trying to serve that indictment." Besides the Commonwealth's Attorney's cursory statement that the pandemic affected how police conducted their duties during this time period, there is no evidence in the record suggesting that the delay from indictment to arrest was due to a pandemic-related reason; thus, we reject the Commonwealth's argument that the reason for delay in this case was related to the COVID-19 pandemic.

is entitled to 'strong evidentiary weight' in determining whether he was deprived of the right." *Id.* (quoting *Barker*, 407 U.S. at 521-22).

Appellant was arrested on September 1, 2021, a day after learning of the indictment against her. She was appointed an attorney in mid-September 2021 and first met with her attorney near the end of October 2021. Appellant filed a motion to dismiss the indictment on constitutional speedy trial grounds on November 3, 2021.

Based on this record, we conclude that appellant timely asserted her Sixth Amendment right by a motion to dismiss in the trial court after she had become aware of the indictment. Thus, appellant's assertion of her constitutional speedy trial right should be given "strong evidentiary weight" in determining whether her right was violated, and accordingly this factor weighs in appellant's favor. *Id.* (quoting *Barker*, 407 U.S. at 531).

### 4. Prejudice

The last factor we consider is whether appellant was prejudiced by the delay. Concerning prejudice, the constitutional speedy trial right aims to protect three separate interests: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last." *Barker*, 407 U.S. at 532. Appellant challenges the time period between indictment and arrest in which she was unaware of the outstanding indictment, so she did not endure pretrial incarceration or anxiety regarding facing trial. Accordingly, of these three interests, only the third is relevant here.

"[T]he inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past." *Id.* Prejudice is assessed under a "three-tiered test" depending on the government's "degree of

culpability" in the delay. *Ali*, 75 Va. App. at 47 (quoting *Shavin v. Commonwealth*, 17 Va. App. 256, 268 (1993)). If the Commonwealth intentionally delayed in prosecuting appellant, "'that official bad faith in causing delay will be weighed heavily against the government' even if 'the accused cannot demonstrate exactly how it has prejudiced him.'" *Id.* (quoting *Doggett*, 505 U.S. at 656-57). However, "if the Commonwealth bears no fault in the delay and proceeds 'with reasonable diligence,' then the defendant's 'speedy trial claim w[ill] fail . . . as a matter of course however great the delay, so long as [the defendant cannot] show specific prejudice.'" *Id.* (alterations in original) (quoting *Doggett*, 505 U.S. at 656). If the delay was "caused by governmental negligence," as it was in appellant's case, it "occupies the middle ground." *Id.* (quoting *Doggett*, 505 U.S. at 656-57).

The Supreme Court examined this middle ground in *Doggett*. It held that the portion of the pretrial delay attributable to the government—six and a half years—was egregious enough to presumptively prejudice the defendant under the fourth *Barker* factor, despite the lack of an "affirmative showing that the delay weakened his ability to raise specific defenses, elicit specific testimony, or produce specific items of evidence." *Doggett*, 505 U.S. at 655, 657. The Supreme Court made clear that government negligence is not "automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him." *Id.* at 657. Instead, the Court noted that "consideration of prejudice is not limited to the specifically demonstrable" and that "affirmative proof of particularized prejudice is not essential to every speedy trial claim." *Id.* at 655. Given that "time's erosion of exculpatory evidence and testimony" can hinder a defendant's ability to prove that his defense was impaired by a delay, the Supreme Court stated that "we generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." *Id.* In addition, this presumption of prejudice can be mitigated by a showing that the defendant

acquiesced in the delay or can be rebutted if the Commonwealth "affirmatively prove[s] that the delay left [the defendant's] ability to defend himself unimpaired." *Id.* at 658 n.4.

In considering whether there is a presumption of prejudice in this case, we find our Court's decision in *Shavin*, 17 Va. App. 256, instructive. In *Shavin*, we described "the middle test as set forth in *Doggett*" for cases involving government negligence as "prejudice will be presumed and its weight in appellant's favor will depend on the length of the delay." *Id.* at 269.[7] However, our Court further held that the specific facts in that case overcame the presumption of prejudice. *See id.* at 270 ("Although *Barker* and *Doggett* require us to presume that appellant was prejudiced by the delay, the length of the delay attributable to the Commonwealth is so short that it overcomes this presumption."). In *Shavin*, the length of delay between arrest and trial was five years, but only two and a half years were attributable to the Commonwealth due to its negligence in bringing the defendant to trial.[8] *Id.* at 269. Our Court noted that the

---

[7] Our Court in *Shavin* also noted that "such presumptive prejudice [without more] cannot alone carry a Sixth Amendment claim." *Shavin*, 17 Va. App. at 269 (alteration in original) (quoting *Doggett*, 505 U.S. at 656). Rather, "it is [merely] part of the mix of relevant facts, and its importance increases with the length of the delay." *Id.* (alteration in original) (quoting *Doggett*, 505 U.S. at 656). Here, any possible presumptive prejudice would be slight at most because the 13-month delay was relatively short.

[8] In *Shavin*, the Court stated, "The length of the delay between arrest and trial was the same here as in *Barker*—five years." *Shavin*, 17 Va. App. at 269 (citing *Barker*, 407 U.S. at 533). Of those five years, this Court stated, "two-and-a-half years was excusable based on appellant's admitted consent." *Id.* Therefore, the Court in *Shavin* held the Commonwealth responsible for the other two and a half years of delay, and stated that it "assume[d] arguendo that the Commonwealth was at least negligent in failing to bring appellant to trial sooner." *Id.*

The dissent asserts that we have miscalculated the length of delay in *Shavin*, arguing that the delay in *Shavin* that overcame the presumption of prejudice was only six months. In *Shavin*, our Court analyzed two specific time periods—the two and a half years of delay attributable to the Commonwealth's negligence, and the six-month time period within that two and half years between the defendant's assertion of his speedy trial right and his trial. *Id.* at 269-71. While our Court stated that the "deciding factor" in that case was the short period of time after the defendant's assertion of his speedy trial right and when his trial was held, our Court also analyzed the entire two-and-a-half-year delay in full and noted that the entire delay in *Shavin* was much shorter than in *Doggett* or *Barker*. *Id.* at 270, 271.

two-and-a-half-year delay was "much smaller" than that in *Doggett* or *Barker*. *Id.* at 270. We also found that "the deciding factor" was that the defendant "did not formally assert his right to a speedy trial until he filed a written motion" and "was then tried within six months of his assertion of that right." *Id.*

As in *Shavin*, we find here that any presumptive prejudice as a result of the Commonwealth's negligence in arresting appellant was overcome by the specific facts in this case. The delay in this case is significantly shorter than *Barker* and *Doggett*, and *Shavin* itself. Further, appellant's trial was set merely a month after she had asserted her speedy trial right. Because the length of delay attributable to the Commonwealth was much shorter than the delay that our Court found overcame the presumption of prejudice in *Shavin*, and because appellant was tried shortly after asserting her speedy trial right, we conclude that any presumptive prejudice has been overcome.[9] Therefore, even accepting, as we must,[10] the holding from *Shavin*

---

Further, we note that the overall holding from *Shavin* is that delay attributable to the Commonwealth's negligence can be "so short that it overcomes th[e] presumption" of prejudice. *Id.* at 270. That is the case here.

[9] Additionally, our Court in *Shavin* noted that the defendant "was aware of his indictment and the trials of related defendants as they took place." *Shavin*, 17 Va. App. at 269. While appellant here was unaware of her indictment, this fact is not dispositive to our analysis, especially considering that the length of delay in this case was much shorter than in *Shavin*.

[10] The interpanel accord doctrine mandates that "a decision of a panel of the Court of Appeals becomes a predicate for application of the doctrine of *stare decisis* until overruled by a decision of the Court of Appeals sitting *en banc* or by a decision of [the Supreme] Court." *Brown v. Commonwealth*, 68 Va. App. 44, 51 n.1 (2017) (quoting *Johnson v. Commonwealth*, 252 Va. 425, 430 (1996)). However, we note that we question the analysis of presumed prejudice articulated in *Shavin*, where our Court held that we presume prejudice under the fourth *Barker* factor in every case involving government negligence. The Supreme Court in *Doggett* held that prejudice will be presumed where a delay is "excessive," not that every delay due to government negligence will result in a presumption of prejudice. *Doggett*, 505 U.S. at 655. Therefore, if not for *Shavin*, we would examine whether a 13-month delay between indictment and arrest is excessive enough to apply a presumption of prejudice under the fourth *Barker* factor. Nonetheless, we conclude that any presumed prejudice here was overcome based on the specific facts of this case and therefore the presumptive prejudice analysis does not affect the ultimate outcome in this case.

that government negligence requires us to presume prejudice under *Barker*'s fourth factor, we

conclude that any presumed prejudice was overcome.[11]

---

We also note that *Shavin* was issued in 1993, a year following the Supreme Court's decision in *Doggett*. *Shavin* relied on a Ninth Circuit case issued earlier in 1993 for the conclusion that prejudice is presumed under the fourth factor when the government's negligence has produced the delay. *See Shavin*, 17 Va. App. at 269 (citing *United States v. Aguirre*, 994 F.2d 1454 (9th Cir. 1993)). More recently, the Fourth Circuit, in an unpublished per curiam decision, has held that delay is not presumed in cases of government negligence; instead, courts look to the length of delay in determining whether prejudice is presumed. *See United States v. Lloyd*, 645 F. App'x 273, 280 (4th Cir. 2016) ("Negligence over a *sufficiently long period* can establish a general presumption that the defendant's ability to present a defense is impaired, meaning that a defendant can prevail on his claim despite not having shown specific prejudice." (emphasis added) (quoting *United States v. Velazquez*, 749 F.3d 161, 175 (3d Cir. 2014))). Several other federal circuits agree that this is the correct approach under *Doggett*. *See United States v. Moreno*, 789 F.3d 72, 78 (2d Cir. 2015) (noting that delays due to government negligence will only be found presumptively prejudicial if the delay was excessive); *Maples v. Stegall*, 427 F.3d 1020, 1030-31 (6th Cir. 2005) (same); *United States v. Erenas-Luna*, 560 F.3d 772, 779 (8th Cir. 2009) (same); *Jackson v. Ray*, 390 F.3d 1254, 1261 (10th Cir. 2004) (same). *But see United States v. Bergfeld*, 280 F.3d 486, 490 (5th Cir. 2002*)* (noting that the first three *Barker* factors "should be used to determine whether the defendant bears the burden to put forth specific evidence of prejudice (or whether it is presumed)"); *United States v. Ingram*, 446 F.3d 1332, 1336 (11th Cir. 2006) (same); *United States v. Fernandes*, 618 F.Supp.2d 62, 73 (D.D.C. 2009) (holding that under the fourth *Barker* factor, "[i]f the government is more to blame for delay than the defendant, then prejudice is presumed"). In addition, we note that we have not discovered any federal or state case where a delay of 13 months, even when attributing all of the time against the Commonwealth, was found to be a constitutional speedy trial violation.

[11] The dissent relies heavily on an Eleventh Circuit decision, *Ingram*, 446 F.3d 1332. While there are some factual similarities between the two cases, there are also significant differences, and we do not find the holding in *Ingram* to be persuasive in the appeal now before us. As an initial matter, while federal court decisions can be considered persuasive authority for this Court, "such decisions are not binding precedent." *Toghill v. Commonwealth*, 289 Va. 220, 227 (2015). Further, *Ingram* is distinguishable from this case in that the delay there was two years, measured from indictment to trial. *Ingram*, 446 F.3d at 1338. Here, the time period challenged by appellant, the period from indictment to arrest, is only shortly more than one year. In addition, in *Ingram* the federal appeals court considered the over two-and-a-half-year "pre-indictment delay in determining how heavily post-indictment delay weighs against the Government," and concluded that "the two-year post-indictment delay in this case weighs more heavily than a two-year delay in another case might if, in that case, the post-indictment delay began shortly after the allegedly criminal acts occurred." *Id.* at 1339. We make no determination as to whether Virginia courts should consider pre-indictment delay in their consideration of how post-indictment delays weigh against the Commonwealth. We simply note that this also distinguishes this case from *Ingram*, as appellant's offense occurred in February 2020 and she was indicted in August 2020, a six-month delay that is much shorter than the two-and-a-half-year delay in that case.

Therefore, because any presumptive prejudice in this case has been overcome, to have this factor weigh in her favor appellant needed to establish actual prejudice. Appellant "bears the burden of demonstrating actual prejudice, and not its mere possibility." *Kelley*, 17 Va. App. at 547. "Proving only a 'possibility of prejudice is not sufficient to support' a speedy trial right violation." *Id.* (quoting *United States v. Loud Hawk*, 474 U.S. 302, 315 (1986)).

Appellant argues that the government's negligent delay in arresting her following her indictment impaired her defense because she has problems with her memory. We reject appellant's argument and conclude that she failed to demonstrate actual and not possible prejudice to her defense. To convict appellant of perjury under Code § 18.2-434, the Commonwealth had to prove that she believed the statement she made on the concealed handgun permit application regarding a prior conviction was false at the time she made it. *See Adjei v. Commonwealth*, 63 Va. App. 727, 748 (2014). Her inability at the hearing on her motion to dismiss to recall the dates on which police officers had come to her house or stopped her for traffic violations does not mean that she also could not recall the circumstances of applying for a concealed handgun permit. Without more, we cannot speculate that appellant's lack of recall of certain dates also means that she was unable to remember the circumstances surrounding the statements made on her concealed handgun permit application. Accordingly, "[t]o conclude on this record that [appellant's] defense was impaired by the delay in bringing [her] to trial would require nothing short of sheer speculation on our part." *Beachem*, 10 Va. App. at 134.

Further, "if the memories of the defendant's own witnesses are diminished, the effect of that loss on the defendant's case must be demonstrated before prejudice may be found." *Kelley*, 17 Va. App. at 547. In this case, appellant failed to provide this Court with a transcript of the plea hearing. Thus, on appeal, we do not have a record of what evidence the Commonwealth

would have adduced if the case had gone to trial and cannot fully evaluate whether appellant's defense was harmed by her claimed memory issues.[12]

### B. Overall Assessment of Barker Factors

Thus, under the *Barker* four-part test, we conclude that: (1) the length of the delay warranted further inquiry; (2) while no government misconduct caused the 13-month delay, the Commonwealth did not have a legitimate reason for not arresting appellant sooner; (3) appellant timely asserted her speedy trial right; and (4) the 13-month delay was not presumptively prejudicial and appellant failed to show that the delay actually prejudiced her case. "We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Barker*, 407 U.S. at 533. "In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process." *Id.* When considered together, we conclude that these factors in total do not "weigh in h[er] favor." *Ali*, 75 Va. App. at 35 (quoting *Thomas*, 55 F.3d at 148). Thus, appellant has failed to show that her constitutional right to a speedy trial was violated.

### III. CONCLUSION

For the reasons stated above, we find no violation of appellant's constitutional speedy trial right. Accordingly, the trial court did not err in denying her motion to dismiss and we affirm appellant's conviction.

*Affirmed.*

---

[12] Appellant also failed to include in the record the application for the concealed handgun permit, which could have shown whether the clerk who signed the form and was a potential witness was available to testify at the time of trial. "The burden is upon the appellant to provide us with a record which substantiates the claim of error." *Kerr v. Commonwealth*, 35 Va. App. 149, 151 (2001) (quoting *Jenkins v. Winchester Dep't of Soc. Servs.*, 12 Va. App. 1178, 1185 (1991)).

Causey, J., dissenting.

All four of the *Barker v. Wingo*, 407 U.S. 514 (1972), factors weigh in favor of finding that the Commonwealth violated Reedy's right to a speedy trial. For this reason, I respectfully dissent.

The majority concedes that the first three factors weigh in Reedy's favor. It also concedes that Reedy's timely assertion of her speedy trial rights is "entitled to 'strong evidentiary weight.'" *Kelley v. Commonwealth*, 17 Va. App. 540, 546 (1994) (quoting *Barker*, 407 U.S. at 531). The majority also correctly notes that "[n]one of the factors is either 'necessary or sufficient' to finding a violation." *Ali v. Commonwealth*, 75 Va. App. 16, 35 (2022) (quoting *Kelley*, 17 Va. App. at 544). Therefore, it clearly follows that an accused does not have to show that all four factors weigh in her favor to establish a violation of her speedy trial rights. *See Holliday v. Commonwealth*, 3 Va. App. 612, 619 (1987) ("[T]he failure to demand a speedy trial is not a factor which, standing alone, will defeat a constitutional speedy trial claim.").

Reedy is not required to show actual prejudice. *Fowlkes v. Commonwealth*, 218 Va. 763, 771 (1978) ("We conclude that defendant's failure to make an evidentiary showing of actual prejudice to his defense was not fatal to his claim."); *Moore v. Arizona*, 414 U.S. 25, 26 (1973) ("*Barker v. Wingo* expressly rejected the notion that an affirmative demonstration of prejudice was necessary to prove a denial of the constitutional right to a speedy trial[.]"). "Instead, '[the *Barker* factors] are related factors that "must be considered together with . . . other [relevant] circumstances."'" *Ali*, 75 Va. App. at 35 (second and third alterations in original) (quoting *Kelley*, 17 Va. App. at 544).

Given that the presence of all four factors is unnecessary, the majority's concession that the first three factors weigh in Reedy's favor, and the strong evidentiary weight entitled to Reedy

for the third factor, the overwhelming majority of the factors already weigh in favor of finding that the Commonwealth violated Reedy's speedy trial rights. Thus, even if the fourth factor weighed against Reedy, it would not tip the scale enough to outweigh the other three factors. Therefore, the factors weigh in favor of finding a speedy trial violation. However, even though Reedy does not need the fourth factor to weigh in her favor to establish a speedy trial violation, the fourth factor does weigh in her favor.

As the majority correctly notes, because the entire delay was due to the Commonwealth's negligence, "prejudice will be presumed," but the length of the delay may rebut the presumption.[13] *Shavin v. Commonwealth*, 17 Va. App. 256, 269-70 (1993) (holding that a "delay attributable to the Commonwealth" that is "so short" can "overcome[] this presumption"). Additionally, the Commonwealth can rebut this presumption by showing that the defendant acquiesced in the delay or "affirmatively prov[ing] that the delay left [the defendant's] ability to defend himself unimpaired." *Doggett v. United States*, 505 U.S. 647, 658 & n.4 (1992). Therefore, the burden is on the Commonwealth to rebut the presumption. However, the Commonwealth never presented evidence or argued that Reedy acquiesced in the delay or that her ability to defend herself was unimpaired. In fact, the Commonwealth only argued that the length of the delay overcomes the presumption of prejudice, which this Court has held applies—

---

[13] The majority "note[s] that [it] question[s] the analysis of presumed prejudice articulated in *Shavin* [*v. Commonwealth*, 17 Va. App. 256 (1993)], where our Court held that we presume prejudice under the fourth *Barker* factor in every case involving government negligence." The majority correctly acknowledges that we are bound by the interpanel accord doctrine to this interpretation of *Doggett v. United States*, 505 U.S. 647 (1992), and cites alternate interpretations of *Doggett* that it implies are more correct than the one adopted by our Court. I note, however, that at least one other jurisdiction has adopted this Court's interpretation of *Doggett*. *See United States v. Alexander*, 817 F.3d 1178, 1182 (9th Cir. 2016) ("*If the government* intentionally delayed or *negligently pursued the proceedings*, . . . *prejudice may be presumed*, and its weight in the defendant's favor depends on the reason for the delay and the length of the delay." (emphasis added)).

- 17 -

and should be analyzed—under the fourth *Barker* factor in *every* case, such as this one, involving government negligence. *Shavin*, 17 Va. App. at 269.

The majority holds that the length of delay overcomes the presumption of prejudice, relying on the holding in *Shavin*. *Id.* However, the majority miscalculates the length of delay in *Shavin*, arguing that "the specific facts in that case overcame the presumption of prejudice," one of the facts being that the "the two-and-a-half-year delay" was "so short that it overc[a]me[]" the presumption of prejudice. In interpreting *Shavin*, the majority fails to complete the required analysis under *Barker*, namely, what amount of the delay was attributable to whom and why. If correctly calculated, the majority would have concluded that, in *Shavin*, the delay that overcame the presumption of prejudice that was attributable to the Commonwealth's negligence was only six months, not the entire two and a half years. *See Shavin*, 17 Va. App. at 270 ("[Shavin] was . . . tried within six months of his assertion of that right. Although *Barker* and *Doggett* require us to presume that appellant was prejudiced by the delay, the length of the delay attributable to the Commonwealth is so short that it overcomes this presumption."). Thus, the majority incorrectly calculates and states that the two and a half years were all attributable to the Commonwealth's negligence in *Shavin*, when in fact the case clearly states that the Commonwealth's negligence was only six months.[14] The length of delay attributed to the Commonwealth's negligence in *Shavin* is highly distinguishable from this case, where the length

_____

[14] The majority correctly cites the Court's statement in *Shavin* that two and a half years of the delay were due to the Commonwealth's negligence. *See Shavin*, 17 Va. App. at 269. However, immediately before ruling that the delay was "so short" that it overcomes the presumption of prejudice, the Court noted that "appellant acquiesced in the prosecutor's proposed order of trials and did not formally assert his right to a speedy trial until" six months before his trial. *Id.* at 270. Thus, the Court concluded that Shavin had acquiesced in all but six months of the delay due to the Commonwealth's negligence, and the remaining six months was the period that was "short" enough to overcome the presumption of prejudice. As the majority recognizes, "acquiesce[nce]" in the delay is one of the three ways by which the Commonwealth can rebut the presumption of prejudice. *Doggett*, 505 U.S. at 658 & n.4. Here, Reedy has not acquiesced to any of the delay due to the government's negligence.

- 18 -

of delay attributable to the Commonwealth's negligence is over a year. The length of delay here attributable to the Commonwealth's negligence is twice the length of the delay in *Shavin*.

Additionally, this Court noted that Shavin was aware of his indictment, explaining that when an accused is "unaware of his indictment prior to his arrest and, therefore, had no incentive to prepare a defense," "the likelihood of prejudice" is larger than when an accused is "aware of his indictment." *See id.* at 269-70 (discussing how the defendant in *Doggett* was unaware of the indictment, which further prejudiced the defendant's defense). Here, Reedy was unaware of her indictment, and upon discovering it, immediately turned herself in to the authorities. Continuously, throughout the time she was unaware of the indictment, she was unable to preserve evidence to aid in her defense. Thus, "the likelihood of prejudice" is great because she was unaware of her indictment.

Additionally, as the majority recognizes, "the deciding factor" in *Shavin* was that the defendant "did not formally assert his right to a speedy trial until he filed a written motion" and "was then tried within six months of his assertion of that right." *Id.* at 270. Shavin had been indicted and aware of the charges against him for four years, seven months, and thirteen days before he asserted his speedy trial rights. *See id.* at 259-60, 269. Here, Reedy was unaware of her indictment for about thirteen months and asserted her speedy trial rights immediately, and, as the majority concedes, the timeliness of her assertion is entitled to "strong evidentiary weight." *Kelley*, 17 Va. App. at 546 (quoting *Barker*, 407 U.S. at 531). Thus, *Shavin* is significantly distinguishable from this case.

The court in *United States v. Ingram*, 446 F.3d 1332 (11th Cir. 2006), reiterated that "there is no hard and fast rule" on what length of delay likely prejudices a defendant, "and each case must be decided on its own facts." *Ingram*, 446 F.3d at 1338 (quoting *United States v. Clark*, 83 F.3d 1350, 1354 (11th Cir. 1996)). While recognizing that "presumptive prejudice"

has different meanings in the context of the factor one and factor four analyses,[15] the court noted that the one-year presumption of prejudice from factor one can inform the prejudice inquiry in factor four of how long a delay must be to conclude that an accused's defense was likely prejudiced. *See id.* at 1338 ("The post-indictment delay in this case was two years, *twice the threshold for presuming prejudice*." (emphasis added)).

Like Reedy, Ingram was convicted for "making false statements in connection with the attempted purchase of a firearm." *Id.* at 1334. On February 28, 2000, Ingram completed a form in the application process for a firearm on which he "answer[ed] 'no' to [the question], 'Have you been convicted in any court of a crime for which the judge could have imprisoned you for more than one year even if the judge actually gave you a shorter sentence?'" *Id.* The grand jury indicted Ingram on October 25, 2002. *Id.* at 1335. Like Reedy, Ingram was unaware of the indictment until July 28, 2004. *Id.* Shortly after he was informed of the indictment, he turned himself in to authorities on August 3, 2004, just as Reedy did. *Id.*

For speedy trial purposes, the court in *Ingram* calculated the delay from the date of indictment to the trial date, resulting in a delay of two years, just three months longer than the delay here, if measured from indictment to trial date. The delay between the indictment and the day of Ingram's arrest was about twenty-one months. *Id.* at 1335, 1337; *see Doggett*, 505 U.S. at 652 (measuring the delay from indictment to arrest). As is the case for Reedy, Ingram's entire delay was attributed to the government's negligence. *Ingram*, 446 F.3d at 1338. The *Ingram* court held that the government's negligence was "egregious"; its investigation of the offense was

---

[15] "'Presumed prejudice' has a dual meaning." *Crebs v. State*, 474 P.3d 1136, 1147 (Wyo. 2020). "'Presumptive prejudice' initially refers to the threshold determination of whether the pretrial delay is long enough to trigger consideration of the *Barker* factors." *Id.* "'[A]s the term is used in this threshold context, "presumptive prejudice" does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* enquiry.'" *Id.* (quoting *Durkee v. State*, 357 P.3d 1106, 1111 n.2 (Wyo. 2015) (quoting *Doggett*, 505 U.S. at 652 n.1)).

not "performed diligently"; and "the record . . . d[id] not support any reasonable explanation for the [g]overnment's neglect in executing the warrant." *Id.* at 1339. Here, the record also shows that the Commonwealth's negligence is egregious, and its investigation of the offense was not conducted diligently. As the majority notes, "the Commonwealth offered no specific explanation for the delay in serving the capias on appellant." Additionally, the Commonwealth's Attorney stated, "frankly, I'm not sure what the reason for the delay was. Apparently, there was no one during that period of time who was out looking for the defendant or trying to serve that indictment." The circuit court found that there was "[c]lear negligence on the part of the Police Officers."

The court in *Ingram* noted facts specific to the case that informed its determination that Ingram's defense was likely prejudiced. One fact it emphasized was the "nonviolent" and unexceptional nature of the offense. *Ingram*, 446 F.3d at 1337. It stated that "*[c]onsidering the crime for which Ingram was indicted*, [along with other factors], we find the two-year post-indictment delay *intolerable*." *Id.* at 1339 (emphasis added) (quoting *Barker*, 407 U.S. at 531 ("[T]he delay that can be tolerated *for an ordinary street crime* is considerably less than for a serious, complex conspiracy charge." (emphasis added))). The court also noted how Ingram did not "evade arrest" before turning himself in to authorities. *Id.* at 1338. The court eventually concluded that, under those specific circumstances, the "[t]he first three *Barker* factors all weigh heavily against the [g]overnment" and Ingram was entitled to a presumption of prejudice. *Id.* at 1340. Importantly, it did not conclude that the length of delay—two years from indictment to trial, but twenty-one months from indictment to arrest—rebutted this presumption. *Id.* Because all of the factors weighed in Ingram's favor, he established that the government had violated his speedy trial rights. *Id.*

Therefore, contrary to the majority's opinion in this case, the thirteen-month delay does not rebut the presumption of prejudice.

First, as this Court recognized in *Shavin*, the likelihood of prejudice is larger because Reedy was unaware of her indictment. There is no evidence that Reedy was aware of the indictment until her friend notified her of the outstanding capias on August 31, 2021.

Second, like in *Ingram*, the unexceptional nature of the offense and Reedy's lack of evasion of arrest support the conclusion that the delay prejudiced Reedy's defense and this presumption of prejudice was not overcome by the length of the delay. Like Ingram, Reedy was charged with perjury for "willfully swear[ing] falsely under oath on an Application for Concealed Handgun Permit" by falsely answering "Question No. 8(A)(2) on [the] form." The court in *Ingram*, citing *Barker*, called this type of offense "an ordinary street crime" for which "the delay that can be tolerated . . . is considerably less" than for a more serious charge. *Ingram*, 446 F.3d at 1339 (quoting *Barker*, 407 U.S. at 531). I adopt the *Ingram* court's characterization of this offense. The events giving rise to the perjury charge are events that would likely be forgotten after thirteen months. The alleged crime was not a brutal murder or assault, where the emotional nature of the event often sears the events into the memory of the parties involved. *See* Larry Cahill & James L. McGaugh, *Mechanisms of Emotional Arousal and Lasting Declarative Memory*, 21 Trends in Neuroscience 294, 294 (1998) ("Experimental studies amply demonstrate that emotionally arousing experiences tend to be well-remembered."). It was an ordinary, day-to-day interaction—handing paperwork to a clerk behind a counter. After submitting the application for a concealed handgun permit, Reedy's actions suggest she had no reason to believe her conduct was unlawful, and thus memorable. After the grand jury returned the indictment, like Ingram, Reedy lived out in the open for thirteen months. She had several interactions with police, and they did not arrest her on the perjury charge. Also, like Ingram, as

soon as Reedy discovered the indictment, she turned herself in to authorities. Her actions suggest that she was unaware she had engaged in any sort of criminal activity. This unawareness, combined with the passage of time, likely further prejudiced her defense, as Reedy had no reason to preserve information that could aid in a defense against the charge.

Finally, evidence of how Reedy's memory loss affected her defense further supports the conclusion that her defense was likely prejudiced by the delay, and the length of delay did not rebut the presumption of prejudice. At the motion hearing, Reedy testified that she could not remember details about interactions she had with the police within the last six months. By the time of the motion hearing, about twenty-one months had passed since Reedy had allegedly committed perjury. Defense counsel explained that Reedy's loss of memory of the events surrounding the alleged offense affected his ability to negotiate the terms of the plea deal and the pretrial motions that he could have filed. *See Fowlkes*, 218 Va. at 770 (considering the defendant's counsel's representations to the court in evaluating prejudice to the defendant); *see also id.* ("In support of the motion to dismiss, defendant's counsel represented to the trial court that the principal alibi witness could no longer remember the time and sequence of relevant events. True, defendant offered no evidence to that effect, but proof of what has been forgotten is seldom feasible."). He asserted that "[t]he whole case is basically based on the box my client checked or didn't check," and "[t]here's no way to know . . . whether this mark was made before it was submitted or [if] it was something the clerk found and asked my client." He explained that the question on the application "asked if she was convicted of a misdemeanor within five years," and Reedy "had to [do the] calculat[ion] very quickly" in her head. Counsel emphasized, "I don't know who the witnesses are. I can't interview any of those witnesses to tell the [c]ourt whether we have a legitimate defense . . . ."

Because under these circumstances the likelihood of prejudice is significant, I would hold that the thirteen-month delay due to the government's negligence did not rebut the presumption of prejudice, just as the court in *Ingram* held that the twenty-one-month delay did not rebut the presumption of prejudice.

Aside from its argument that the thirteen-month delay is "so short" that it should overcome the presumption of prejudice, the Commonwealth has not rebutted the presumption by *affirmatively* showing that Reedy's defense was left unimpaired. It has made no argument nor presented any evidence that Reedy's defense was unimpaired by the passage of time. It has also not shown that Reedy acquiesced in the delay. Thus, this factor weighs in Reedy's favor.

Because I hold that the fourth factor, prejudice, weighs in Reedy's favor, all four *Barker* factors would weigh in Reedy's favor. Thus, I would hold that the Commonwealth violated Reedy's right to a speedy trial and vacate her conviction. *See Ali*, 75 Va. App. at 34 ("The remedy for . . . a violation [of speedy trial rights], if proved, is dismissal of the charge with prejudice."). For the reasons stated above, I respectfully dissent.